Julius LAMPERT and Evelyn Lampert,
Appellants,

v.

REYNOLDS METALS COMPANY, a
corporation, Appellee.

No. 19823.

United States Court of Appeals
Ninth Circuit.

Jan. 16, 1967.

Herbert H. Anderson, George L. Kirklin, McColloch, Dezendorf & Spears, Portland, Or., for appellants.

Fredric A. Yerke, Jr., Jean P. Lowman, King, Miller, Anderson, Nash & Yerke, Portland, Or., Gustav B. Margraf, W. Tobin Lennon, Richmond, Va., for appellee.

Before HAMLEY, KOELSCH and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

Julius Lampert and his wife, Evelyn Lampert, own a one-hundred-acre tract of land near Troutdale, Oregon, where they raise agricultural crops including gladiolus bulbs and flowers. On June 30, 1959, they brought this action against Reynolds Metals Company in the Circuit Court of the State of Oregon for the County of Multnomah.[1] The purpose of the action is to recover damages for injuries to plaintiffs' real property and growing crops in 1957, 1958 and 1959, caused by fluoride gases and particulates emanating from defendant's nearby aluminum plant. The action was removed to the United States District Court for the District of Oregon because of diversity of citizenship.

The case was tried in the district court before a jury and resulted in a verdict and judgment for plaintiffs in the amount of $10,017. Both sides appealed. We reversed and remanded for a new trial. Reynolds Metals Company v. Lampert, 9 Cir., 316 F.2d 272, adhered to on rehearing, 324 F.2d 465.

Under the terms of an amended pretrial order entered after the remand, plaintiffs sought compensatory damages in the amount of $22,911.31, and punitive damages in the amount of $1,000,000. At the second trial the jury awarded compensatory damages in the sum of $2,888, and denied any award of punitive damages. Judgment was entered on the verdict and plaintiffs took the present appeal.

The principal questions presented here have to do with punitive damages.

At the first trial, plaintiffs introduced evidence tending to show that defendant had known for several years that fluorides from its plant were settling on plaintiffs' land, with resultant damages to the latter's crops. The trial court held that this evidence was insufficient to permit the jury to award punitive damages.

In reversing, we held that, on the basis of the evidence described above, the jury could have found that defendant's trespass was done knowingly and wilfully, and that it was intentional and in wanton disregard of defendant's obligations. This, we held, was sufficient to warrant allowance of punitive damages under Oregon law. The correctness of our view there stated concerning punitive damages under the law of Oregon has recently been confirmed in McElwain v. Georgia-Pacific Corporation, Or., 421 P.2d 957, decided on December 28, 1966. The Oregon Supreme Court there held that punitive damages may be recovered " * * * whenever there was evidence of a wrongful act done intentionally, with knowledge that it would cause harm to a particular person or persons."[2]

At the second trial plaintiffs produced evidence relevant to the allowance of punitive damages which the trial court (a different district judge sitting) apparently thought was substantial enough to take that issue to the jury. However, the court instructed the jury, in effect, that with regard to punitive damages the

1. Henry W. Shoemaker, plant manager of Reynolds Metals Company at that time was also named a defendant, but was later dismissed from the action.

2. In McElwain, the defendant contended, among other things, that it should not be liable for punitive damages if it did everything reasonably possible to eliminate or minimize the damage caused by its mill to the neighboring properties. The Oregon Supreme Court did not have to deal with that contention because it held that, in any event, there was substantial evidence from which the jury could have found that during the period involved in that action, the defendant had not done everything reasonably possible to eliminate or minimize the damage to properties adjoining its plant. While this same question lurks in the litigation now before us, it is not a specific issue on this appeal and we express no view concerning it.

parties were not necessarily equal before the law; that an award of punitive damages involves the blending of the interests of society in general with those of the aggrieved individual or others in like and similar circumstances; that the jury should therefore compare the value to society of defendant's aluminum plant operations with the value of plaintiffs' farming activities; and that in making this comparison the jury should consider defendant's local expenditures incurred in operating the Troutdale aluminum plant, such as taxes, cost of supplies, transportation and electric power, together with the number of employees and annual payroll.

Plaintiffs took timely exception to these instructions and here argue that in giving them, the trial court misconceived the nature and purpose of punitive damages.

In charging the jury that, with regard to punitive damages, it should weigh the apparent value to society of defendant's plant against the value to society of plaintiffs' farming activities, the trial court relied upon a passage from the opinion in Martin v. Cambas, 134 Or. 257, 293 P. 601, 603, reading as follows:

" * * * [e]xemplary, punitive, or vindictive damages involves the blending of the interests of society in general with those of the aggrieved individual in particular. * * * 17 C.J. 968, § 268."

The trial court apparently construed this passage as a holding that, in determining the propriety of an award of punitive damages, the jury should engage in a weighing process with regard to the respective social values to the community of plaintiffs' and defendant's businesses.

We do not so read the language in question. At this point in the *Cambas* opinion the Oregon Supreme Court was explaining why punitive damages are permissible in a proper case. It stated that the generally accepted doctrine is that such damages are awarded by way of punishment of the offender and as a warning to others, or, according to some authorities, by way of example. The court was in effect saying that an aggrieved person may, in addition to compensatory damages, recover punitive damages where the conduct of the defendant warrants it because under aggravated circumstances there is involved not only the interest of the aggrieved party, but the interest of society in general in punishing defendant. Nothing is said in the *Cambas* opinion about a weighing of values as between plaintiff and defendant.

■ The Oregon court, in *Cambas*, relied on a statement in 17 Corpus Juris 968, § 268, where substantially the same "blending" language is used, followed by footnote reference 69. That footnote cites several cases, including Taber v. Hutson, 5 Ind. 322, and Smith v. Bagwell, 19 Fla. 117. The opinions in each of those cases indicate that those courts, likewise, were explaining that an aggrieved person is, in a proper case, entitled to recover punitive damages because not only his interest, but that of society, is thereby served.[3]

■ Punitive damages, as we said in Reynolds Metals Company v. Lampert,

3. In Taber v. Hutson, 5 Ind. at page 325, the court said:
"But Mr. Sedgwick says, that 'whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, the law, instead of adhering to the system or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, it blends together the interest of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender.' "
In Smith v. Bagwell, 19 Fla. at page 121, the court said:
"Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the sufferer but a punishment to the offender and an example to the community."

9 Cir., 316 F.2d 272, 275, may be awarded under a variety of circumstances, one being where the injury was done " * * * recklessly so as to imply a disregard of social obligations. * * * " If reckless conduct by the operator of a manufacturing plant, resulting in injury to a nearby landowner implies a disregard of "social obligations," the "social obligations" in question must be those which the operator owes to the landowner. It could not refer to any supposed social obligation the plant owner has to benefit the community at large by maintaining a large payroll and expending substantial sums in the locality.

■ Without doubt, the operation of the Reynolds Metals Company at Troutdale has social value in that community. But in legal contemplation, the company has no obligation to provide that social value, and certainly no right to do so in disregard of its legal obligation not to cause trespass injuries upon the property of plaintiffs. We find no Oregon decision nor, indeed, any decision from any jurisdiction, which supports the weighing process sanctioned by the trial court.

Counsel for defendant, at the oral argument in this court, characterized the theory in question as "pioneering." In the absence of any indication that the courts of Oregon wish to "pioneer" in this direction, we must conclude that the theory adopted in the instructions referred to above does not represent the law of that state. The trial court therefore erred in giving those instructions.

■ Plaintiffs contend that the basic misconception underlying the instructions discussed above also resulted in the commission of other substantial errors during the course of the trial. One of these involved the opening statement defendant's counsel was permitted to make to the jury over plaintiffs' objection, to the effect that the jury should "weigh the value to the community of Reynolds' operation," and that it should "consider a number of financial matters, which would involve the general contribution of Reynolds to this locality and to this community," reference being made to the size of the company's payroll.

Another related error, plaintiffs urge, was the admission, over plaintiffs' objection, of an exhibit which contained a summary of various expenditures allegedly made locally by defendant in the operation of the Troutdale plant.[4] A third asserted error of this kind pertains to a comment counsel for defendant was permitted to make to the jury during his closing argument, over the objection of plaintiffs, regarding the economy of the area and of the nation, and regarding the importance of aluminum to the national defense.

For the reasons already discussed, we hold that the trial court erred in each of these respects.

■ We do not believe the trial court erred in refusing to give plaintiffs' proposed instruction that the jury could award punitive damages if it found that actual or compensatory damages alone, while they might compensate plaintiffs, will not deter defendants from committing similar trespasses in the future. This consideration pertains to the underlying philosophical reason for the allowance of punitive damages, but does not appeal to us as an appropriate factor for jury consideration.

Plaintiffs argue that the trial court erred in not permitting plaintiffs to contend and prove that an electrostatic precipitator *added* to the existing system of fluoride control would result in the elimination of all but approximately one percent of the total fluoride escaping from the plant. Based on the recitals in the pretrial order, the court permitted plaintiffs to contend only that *removal* of the existing system and the *substitution* of precipitators would provide a superior system of fluoride control.

We think the trial court construed the pretrial order too narrowly. Early in

4. Expenditures made in attempting to prevent the escape of fluorides would be relevant to the issue of the amount of punitive damages, if any.

the trial even counsel for defendant indicated that he understood that plaintiffs were making the broader contention.[5] A detailed discussion of the point is unnecessary since, in any event, prior to the new trial which must be held, plaintiffs would be entitled to present their theory as to this in an amended pretrial order.

The other asserted errors urged by plaintiffs are not likely to recur at the new trial.

Reversed and remanded for a new trial.

---

5. Counsel for defendant said:

" * * * The question is whether the current system, the present system installed in 1950 could be improved by adding electrostatic precipitators. That is the plaintiffs' contention."