THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLIFTON HILL, Defendant-Appellant.

(No. 54276;

First District—January 10, 1972.

*Rehearing denied August 23, 1972.*

Anna Marie Dempsey, of Wimette, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Arthur Belkind, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

On January 19, 1967, Clifton Hill, the defendant herein, and Eugene Armstrong, were jointly indicted for having robbed and murdered Charles Pollard. After a trial by jury, Hill was found guilty of the crimes as charged. For the offense of armed robbery he was sentenced to a term of not less than ten, nor more than twenty years in the penitentiary, and for the crime of murder, he was sentenced to a term not less than fifty nor more than one hundred years in the penitentiary. The sentences were to run consecutively.

In prosecuting this appeal, defendant has raised four contentions. He urges that the evidence of the inculpatory statements which he allegedly made should have been suppressed; that the testimony of Hattie Armstead should not have been allowed in evidence; that the trial court erred in imposing consecutive sentences, and finally, that the sentences were excessive and should therefore be reduced. Because defendant does not contest the sufficiency of the evidence, we will only reiterate those facts which are relevant to the resolution of the issues presented.

Prior to the commencement of his trial, defendant moved to suppress the evidence of certain inculpatory statements which he was alleged to have made while held in custody. At the hearing on this motion to suppress, it was learned that at approximately 5:00 A.M. on the 18th of December 1967 and while accompanied by defendant's mother, Mrs.

Hill, and his girl friend, Hattie Armstead, Officers Thomas Shine and William Lenz arrested defendant as he was alighting from a Greyhound Bus. Upon being placed under arrest, Hill was immediately advised of his right to remain silent, of the fact that anything he might say could be used against him, of his right to have an attorney present while making any statements, and of the fact that if he couldn't afford to hire an attorney, the State would provide one for him. It appears that the officers bought defendant breakfast in a nearby restaurant and thereafter transported him to the Police Station located at 943 West Maxwell Street, Chicago.

Upon arriving at this station, and again being advised of his constitutional rights, defendant stated that he did not want to say anything and that he did not do the shooting. While at this police station he was allowed to change into some clothing which his mother had brought him. It appears that except for the few moments which were spent changing clothes, defendant was at all times in the presence of his mother and girl friend. Defendant was thereafter taken to the Police Central Detention Building located at 1121 South State Street, Chicago, and placed in the lockup.

At approximately 10:30 P.M., later that evening, and while alone in his cell at the lockup, defendant was visited by Elwood Egan and Lee Anderson, both of whom identified themselves as police officers. At the hearing on the motion to suppress, these officers testified that upon seeing the defendant in his cell and advising him of their identity, the defendant stated that he did not want the case closed, and that he did not have the gun, Armstrong did. These officers stopped defendant from saying anything else and when they advised him of his constitutional rights, he replied stating that he understood and that in fact, the other officers had earlier advised him of these rights. When asked if he was represented by an attorney, Hill stated that his mother was in the process of obtaining one. The officers then asked defendant if he had anything else to say. Answering affirmatively, Hill stated that Eugene Armstrong had a .38, not a .32 break open revolver and that Pollard was not shot with his own gun. When asked how he was aware of this fact, defendant stated that he took Pollard's gun from him and while fleeing, threw it away. Upon being asked if there was anything else that he wished to say, defendant replied, stating that there was not and that he wanted to speak to an attorney first. With this response, the questioning ceased. The record indicates that at the time this interrogation took place, Hill was in good physical condition and that at no time did these officers enter his cell.

Citing *Miranda v. Arizona*, 384 U.S. 436, defendant contends that

when he advised Officers Egan and Anderson of the fact that his mother was in the process of hiring an attorney, this constituted the manifestation of his desire to cut off the interrogation. From the record, this does not appear to be the case.

■■ It is the rule that in situations of this nature, where it is undisputed that a defendant has been sufficiently advised of his constitutional rights, the court, in determining the voluntariness of an inculpatory statement, must make an *ad hoc* examination of each particular case. Our examination of the record in the present case reveals that the defendant's inculpatory statements were voluntarily made and not the result of any form of coercion. Furthermore, the record reveals that the defendant knowingly and understandingly waived his right then and there, to have the presence of counsel. We base these conclusions upon the following facts which appear from the record: On three separate occations defendant was adequately advised of his constitutional rights. He stated that he understood these rights. On two of these occasions he manifested that understanding by choosing to remain silent. He made the inculpatory statement immediately after being advised of his rights. He advised the interrogating officers of his desire to speak to an attorney after he made his inculpatory statements.

■■ The facts and circumstances of the interrogation which defendant now complains of suggest that he understood his constitutional rights and that they were knowingly and understandingly waived. As stated *supra*, when Officers Egan and Anderson informed defendant of their identity, they stopped him from saying anything and proceeded to advise him of his rights. The fact that defendant made his inculpatory statement immediately subsequent to being advised of his rights is highly significant, for this court has held that circumstances of a defendant's freely answering questions after receiving an explanation of his rights, is sufficient to rebut the normal presumption against the waiver of constitutional rights. *People v. Hill*, 39 Ill.2d 125; *People v. Long*, 119 Ill.App.2d 75.

■■ We do not agree with the contention that once the police became aware of the fact that defendant's mother was procuring a lawyer, all subsequent interrogation was improper. (*People v. Smith*, 108 Ill.App.2d 172 at 177.) *Narro v. United States*, 370 F.2d 329, is another case in point. There, the accused, after informing her interrogator of the fact that her parents were getting her a lawyer, immediately made a confession. The court held that the defendant was obviously aware of her right to have the presence of counsel and had voluntarily waived it. That the defendant in the present case was aware of his right to counsel and understandingly waived that right, is supported by another fact. After

defendant completed the making of his inculpatory statements, the investigating officers asked if he had anything else to say. To this, defendant replied stating that there was not and that he wanted to first speak to an attorney. If defendant wished to have the presence of counsel prior to the utterance of his inculpatory statements, he obviously would have cut off the interrogation and requested the presence of an attorney earlier than he did. The fact that he made these statements and then informed the officers of the fact that he did not want to make any additional statements without first speaking to an attorney indicates that he was aware of his rights and that prior to the making of his inculpatory statements, he understandingly waived them.

It should be noted that the coercion which the court in *Miranda* sought to curtail does not appear to have existed in the instant case. It is uncontroverted that during this interrogation, the police officers never entered defendant's cell. Furthermore, the record is devoid of any evidence of coercion or intimidation and in fact, it is also uncontroverted that when defendant stated that he did not want to say anything else without first consulting an attorney, the interrogation immediately ceased. Defendant's inculpatory statement, having been voluntarily made and after having been advised of his right to have the presence of counsel, was properly admitted in evidence.

The next contention which defendant has raised is that the testimony of his girl friend, Hattie Armstead, should not have been admitted in evidence. At the trial, this witness testified that on a Thursday morning in mid-December 1967, the defendant showed her a gun which she described as a white-handled .38. This witness stated that defendant told her that he and Armstrong had taken that gun from a man who was parking his car in the alley. Miss Armstead further testified that when defendant requested her to hide the gun because the police were looking for him, she refused.

On cross-examination by the defense, this witness stated that she could not recall the actual incidents which she had testified to on direct examination, and that her testimony was based on a statement which she had given the police shortly after the murder. Miss Armstead testified that although she couldn't remember what she had told the police, what she said at that time was the truth and the signature which appeared on the statement was her own. It appears that at the time she gave her statement, she was afraid because the police had threatened her and kept her in the police station all night. At one point she testified that she did not know whether the report of her statement was accurate. Later, however, she stated that it was.

Defendant contends that since Miss Armstead was unable to say

that report of her statement was accurate, her trial testimony was incompetent and therefore, inadmissible in evidence. With this contention we do not agree. The record reveals that Miss Armstead stated that the report of her prior statement was accurate. Although it appears that at various times she changed her testimony regarding the accuracy of that report, this does not affect the admissibility of her testimony, but only its credibility. See *People v. Harrison*, 384 Ill. 201 at 206, where the court stated:

"The rule is that where there has been a writing made by a witness, or made at his direction at the time of the fact, for the purpose of preserving the memory of it, if at the time of testifying he can recall nothing further than that he had accurately reduced the whole transaction to writing, the latter may be admitted in evidence."

The court went on to hold that testimony based upon such memorandum may likewise be admitted in evidence.

Regarding the contention that the trial judge erred in sentencing defendant to consecutive sentences, in *People v. Baker*, 114 Ill.App.2d 450, this court construed Section 1—7 (m) of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 1—7 (m) ) and held that sentencing the defendant there to consecutive sentences on charges of armed robbery and aggravated battery constituted error. At 114 Ill.App.2d 450, 455—6 it was stated:

"The case at bar contains three counts, one for robbery and two for aggravated battery * * *. Applying the guidelines and limitations laid down in the cases, the disposition of this case depends primarily upon whether the offenses charged in the separate counts resulted from the same conduct. The provision of the Criminal Code relating to the imposition of sentences is chapter 38, section 1—7 (m) Ill. Rev. Stats. (1967), * * * . The term 'conduct' is defined in section 2—4 as 'an act or a series of acts, and the accompanying mental state.' The Committee Comments on section 1—7(m) (SHA, c 38, § 1—7 (m) ), state that the language of that section was intended to codify the holding in Schlenger, supra, so that if the offenses charged resulted from the same conduct, the defendant may not be sentenced on more than one, either concurrently or consecutively."

The court went on to state that: "The initial striking of the victim by defendant, followed by the use of the knife, together constituted the use of force which was an element of the armed robbery."

In *People v. Stewart*, 45 Ill.2d 310, at 313, the court in construing Section 1—7 (m) of the Criminal Code (citation *supra*) stated:

"Nothing in the record in this case suggests that the acts which constituted the offense of aggravated battery were independently moti-

vated or otherwise separable from the conduct which constituted the offense of attempted robbery."

■■ The record in the case at bar reveals no evidence which would suggest that the acts which constituted the offense of armed robbery were independent or otherwise separable from the conduct which constituted the crime of murder. The judgment on Indictment 68—235, which charged defendant with the crime of armed robbery, is therefore reversed.

■■ Defendant's final contention is that the sentence imposed was excessive and should therefore be reduced (Ill. Rev. Stat. 1967, ch. 110A, par. 615 (b) (4) ). It appears from the record that at the time defendant committed the offenses he was 19 years of age and had never been convicted of a felony. It further appears that although he was criminally responsible for the crimes as charged, it was his accomplice, Eugene Armstrong, who actually did the shooting. In view of these factors, and pursuant to the authority granted in Section 615 (b) (4) of the Supreme Court Rules, the judgment is modified by reducing the sentence on the conviction of murder from 50 to 100 years to 30 to 100 years in the penitentiary and as so modified the judgment on the murder charge is affirmed.

Judgment in murder conviction affirmed as modified; judgment in armed robbery conviction reversed.

GOLDBERG, P. J., and LYONS, J., concur.