WALLACE C. LAWSON, Plaintiff-Appellee, *v.* BELT RAILWAY COMPANY OF CHICAGO *et al.*, Defendants-Appellants.

(No. 57959;

First District (3rd Division)—November 6, 1975.

10

Kirkland & Ellis, of Chicago (Gary M. Elden, of counsel), for appellant General Mills, Inc.

Richard F. Koproske, of Chicago (Glen H. Carrier, of counsel), for appellant Belt Railway Co.

Louis G. Davidson, of Chicago (Robert B. Patterson, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The defendants appeal from a $250,000 judgment entered after a trial by jury in an action brought by plaintiff for personal injuries sustained while on the premises of General Mills in the course of his employment

as a switchman for Belt Railway. Plaintiff's complaint charged General Mills with common-law negligence and predicated liability against the Belt Railway under the provisions of the Federal Employers' Liability Act. Upon appeal, each defendant contends that

(1) it was entitled to judgment on the issue of liability as a matter of law; and

(2) the verdict of the jury was excessive.

Defendant General Mills further contends that

(3) it is entitled to a new trial as a result of numerous trial errors which include

(a) error in the admission into evidence of posed photographs;

(b) error in permitting the plaintiff to testify concerning matters of a speculative nature;

(c) error in admitting into evidence as past recollection recorded the prior written statement of a witness who had previously testified from memory;

(d) advising the jury of the plaintiff's allegations via an improperly argumentative "issues" instruction; and

(e) prejudicial error arising from the closing argument of the plaintiff's attorney.

The accident occurred on September 2, 1966, at which time plaintiff was 46 years of age, a high school graduate with 3 years of college. He had been employed by Belt Railway as a switchman since 1955, and testified that he was very familiar with the requirements of his work, which included alighting from moving trains and running along uneven ground surfaces. Prior to the accident plaintiff had not experienced any serious medical problems with either his back or his legs.

The plant where the accident occurred was operated by General Mills at 104th Street and Muskegon Avenue, in Chicago; the actual site was the northwest corner of a warehouse a short distance inside the gate. The north wall of the warehouse ran parallel to a railroad track (track No. 6), located about 5 feet from the building. The ground between the warehouse and the track was covered with gravel. Doors were located at various points along the north wall through which materials could be loaded and unloaded from boxcars on the track. Immediately west of the warehouse was a large open area surfaced with blacktop on which construction pilings had been sunk at several places. The holes containing the pilings were approximately 6 feet in diameter and 30 feet deep. The closest one was located 48 feet west of the warehouse and about 2 feet south of track No. 6 which extended from the fenced gate at the entrance of the plant to the warehouse. Immediately before the point where the

track runs parallel to the north wall of the warehouse the track curves to the left.

The procedure for removal of boxcars from track No. 6 by train crews of Belt Railway was as follows: a train crew must wait outside the plant gate until a General Mills plant guard admits them after he is given a green light signal by a supervisor. Before this signal is given a General Mills "car cooper" orders all General Mills employees off the boxcars which are to be moved; he then closes and locks all the doors of the cars. Belt Railway employees are not permitted to close the doors of boxcars which have been loaded.

On the morning of September 2, 1966, there were five boxcars on track No. 6 adjacent to the warehouse doors; the one next to the westernmost door (spot No. 1) was a center-loading "plug type" boxcar. The door was located at the center of the car and was opened by sliding it on a rail parallel to the side. The door is closed and locked by sliding it over the opening and moving two handles 2½ feet in length situated on the boxcar door in tandem. When the door is locked these handles are flush against the side in a horizontal position. When not locked the door protrudes out on its rail about 8 to 10 inches from the side of the boxcar and the two locking handles hang down from the door. The plug type boxcar at spot No. 1 on the day of the accident had a stenciled warning on its side that the boxcar was not to be moved unless the door was closed and locked.

Plaintiff was a member of a three-man train crew summoned to General Mills plant at 1:30 p.m. on September 2, 1966. They were instructed to remove all 5 boxcars on track No. 6 and to replace 4 of them with other cars. The fifth boxcar, the plug type, was to be reset at its prior position, No. 1. Plaintiff, with Wilbur Patterson, the conductor in overall charge of the crew, and Harry Olsen, the engineer, waited at the gate until they were admitted into the plant by the guard after the green signal had been given. Olsen then coupled the engine onto the plug type boxcar and pulled out of the plant with all five boxcars in tow. Before removing them, Patterson walked the length of the cars to inspect the couplings and doors. He testified that correct procedure dictated that boxcars are not to be moved with open doors, and that he saw no doors open at that time. After dropping off four boxcars outside the plant and coupling onto four others, the crew then pushed the four replacements back into the plant with the plug type boxcar to be reset, still coupled immediately in front of the engine. The movements outside the plant took 10 to 15 minutes; the train then entered the plant and moved east onto track No. 6. Patterson rode on the car farthest from the engine, and plaintiff rode on the south side of the second car from the

engine. Plaintiff testified that he was looking in the direction the train was moving, and that during the entire time the crew was working on the move he never saw any boxcar doors open and unlocked.

On the return move to the warehouse, plaintiff's job was to alight at the northwest corner of the building and pass signals from Patterson to Olsen. This would appear necessary because boxcars can vary in length from 40 to 60 feet; an engineer's position is on the right side of the engine cab; and track No. 6 curved to the left just before reaching the warehouse. Plaintiff testified that at approximately 1½ car lengths from the northwest corner of the warehouse a General Mills supervisor came out yelling and waving his arms at him. Plaintiff stated that he normally would have alighted at the northwest corner, but because of the supervisor's actions he got off the boxcar immediately, as a safety precaution. The train was moving at an estimated speed of 2 to 6 miles an hour, and because of his momentum plaintiff had to jog along with it to keep from falling. He testified that after jogging a few feet he came upon a hole in the ground; to avoid stepping into it he stopped and backed up to his left, at which time he was struck in the back at his waist as the plug type boxcar passed him. Although he was not knocked down he was pushed forward several feet past the hole he had tried to avoid.

Plaintiff further testified that after the occurrence, Roy Uddman, the supervisor who had yelled at him, told him he had "hollered" to him because one of the boxcars in the train was the wrong length. Plaintiff stated that he never looked at the door of the plug type boxcar after the accident, but was taken in the engine to a Belt Railway yard for medical treatment. On cross-examination he estimated that the hole he had tried to avoid was 8 to 10 inches deep.

Roy Uddman testified. When he came out of the warehouse plaintiff was already off the train and standing about 2 feet from the building. He called to him and plaintiff turned toward him; Uddman did not see plaintiff struck by anything but he did see him arch forward at that point. After plaintiff told him he had been hit Uddman took a photograph of the plug type boxcar. The door of the car was not locked, but the door handles were hanging down flush against the side.

Harry Olsen testified. He could not recall the accident other than what he had stated in a report he completed shortly after it occurred. After being shown the report Olsen testified substantially the same as recorded. He stated that he could see down the south side of the train when it was moving on a straight portion of track; that the door on the plug type· boxcar was open and it was the door which struck plaintiff in the back. The record is silent as to when Olsen first observed that the door was

open or whether plaintiff was already on the ground when Uddman began calling to him, although Olsen did state that he observed Uddman calling to plaintiff before he was struck by the door. Olsen further stated that the train was moving at a speed at which it could have been stopped within a couple of feet, and that he did in fact so stop the train after plaintiff was hit. At the conclusion of the testimony plaintiff offered the accident report into evidence as past recollection recorded. The trial court admitted the report into evidence over the objection of defendant General Mills. Patterson, the conductor, testified that he did not observe the accident.

In his testimony plaintiff was permitted by the trial court, over objection of defendant General Mills, to offer his conclusion as to how he had been struck after moving to his left to avoid the hole he saw in the ground. He testified that he knew he had moved closer to the train than he normally would have, and that he knew standing too close to a moving train was dangerous. However, although he had stated that he did not see what struck him, plaintiff stated that he could not have moved close enough to the train for the car to strike him as it would have caused a brushing movement which did not occur. He stated that instead, it must have been either the door or the handles which hit him.

During plaintiff's case-in-chief, six photographs of the boxcar in question were offered into evidence, one of which was taken by Roy Uddman soon after the accident. The other five had been supplied to plaintiff by Belt Railway. The five photographs show the various positions in which the door handles may be placed when locked and unlocked. One of the pictures shows the door unlocked with the handles hanging away from the door at about a 30-degree angle. A Belt Railway employee testified that the photographs were taken of the boxcar some time prior to October 1969, probably in one of Belt Railway's Kansas City yards. The trial court admitted the photographs into evidence over objection of General Mills that there was not a proper foundation nor any evidence to establish that the door handles of the plug type boxcar were hanging out from the door at the time of the accident. The court stated that the photographs were being admitted for the purpose of exhibiting to the jury the door mechanism and how it operated.

Plaintiff's medical evidence reflected that he experienced a steady degeneration in his back and right leg. Attempts to rectify this condition with medication and periods of traction failed to establish improvement for any sustained length of time. Subsequently, a laminectomy was performed which involved the removal of a portion of spinal nerve from plaintiff's back. The post-surgical prognosis was one of permanent instability in the right leg and an inability to lift objects of heavy weight.

Plaintiff was advised that he could work at light jobs on even surfaces, but could not resume his employment as a switchman because of the instability in his right leg. He testified that he takes two pain pills a day and occasionally wears a back brace, and that he has periodic pain in his right leg.

Evidence as to plaintiff's lost earnings, both past and future, was presented. In 1964 he earned $6,922.25; in 1965, $8,397.67, and in 1966, for the 9 months prior to the accident, he earned $5,419.01. Plaintiff testified that after his laminectomy he was unsuccessful in finding other employment until October 1968, when he secured a job as clerk and cashier at a bowling alley where he was paid $100 a week, excluding overtime. He moved to Atlanta, Georgia, in February 1971 for the stated purposes of a more healthful climate and the financial benefit he could receive by living there with his younger brother. The only employment he could find there was with a catering company at a salary of $50 for a 3-day week.

At the conference on instructions plaintiff submitted a separate issues instruction as to each of the two defendants. Instruction No. 32 dealt with charges of negligence directed at defendant General Mills, including negligence in positioning an excavation or hole in dangerous proximity to track No. 6; in failing to provide plaintiff with a safe place in which to do his work; in failing to warn plaintiff of the presence of the excavation; in failing to barricade or cover the excavation; in causing, through the actions of its supervisor, to lead plaintiff to believe that an emergency requiring immediate action had developed; and in ordering the movement of a plug type boxcar without previously having closed and locked its door. The instruction concluded with a general denial of the allegations of negligence by defendant General Mills.

An objection by defendant General Mills that the instruction was overly argumentative in several of its counts of negligence was overruled by the trial court, and the instruction was given. A separate burden of proof instruction was given, detailing the elements plaintiff had to prove to recover against defendant General Mills. The court, over the objection of defendant General Mills, gave plaintiff's instruction No. 23 (Illinois Pattern Instruction No. 34.04), that any award of money damages must not be determined by multiplying damages by the number of years in which they will continue in effect without also reducing such an amount to its present cash value. However, no actuarial evidence was introduced at trial to guide the jury in applying the present cash value instruction.

During his initial closing argument, plaintiff's counsel recalled to the jury plaintiff's testimony concerning Roy Uddman's actions immediately

before the accident. Defendant General Mills objected to the argument which included a reference to plaintiff's testimony that because of Uddman's actions he thought an emergency had arisen. The objection was that plaintiff's conclusion had previously been stricken by the court, and reference to it in closing argument was therefore improper. The objection was sustained. However, the remainder of the remarks as to plaintiff's testimony concerning Uddman's actions were not challenged. Plaintiff's counsel also began to read to the jury a written accident report completed by Wilbur Patterson after the occurrence, similar to the one completed by Harry Olsen. Although Patterson had been questioned concerning the report during his testimony, it had never been introduced into evidence. An objection by defendant General Mills to the reading of Patterson's report was overruled by the court. Thereafter, despite the objection having been overruled, plaintiff's counsel merely paraphrased the report's contents to the jury.

In his closing argument, counsel for defendant General Mills repeatedly made the accusation that a conspiracy apparently existed between plaintiff and defendant Belt Railway. At one point he further suggested that collusion between plaintiff and defendant Belt Railway had resulted in plaintiff's obtaining posed photographs of the plug type boxcar. Counsel for defendant General Mills also argued on eight different occasions that it was money the plaintiff was seeking, and that it was customary for lawyers representing plaintiffs to request a huge sum.

In his final closing argument plaintiff's counsel stated that the remarks concerning a conspiracy between plaintiff and defendant Belt Railway were an attempt to create prejudice against the plaintiff and the attorneys in the case. He also stated that the photographs secured from defendant Belt Railway were received pursuant to a court order, and the insinuation that they were secured through collusion of the parties was unfair and hitting below the belt. Defendant General Mills made no objection to the reference to the court order, nor to any of the remarks about defense counsel's trial tactics, other than an objection to a characterization of them as outrageous and unprofessional, which was overruled by the trial court. Plaintiff's counsel then stated that there was nothing improper in plaintiff's seeking an award of money damages; that defendant General Mills was in business to try and make money; and that defendant General Mills can replace one of its warehouses but plaintiff cannot replace what he has lost. An objection by defendant General Mills to the remarks of plaintiff's counsel was overruled by the court. In arguing damages to the jury, plaintiff's counsel stated that the jury might average out plaintiff's past lost earnings, and in addition should consider the effect of inflation upon wages. He further argued

that plaintiff's estimated future lost earnings could approximate $12,000 a year, or $168,000 until the age of 65, from which the jury should deduct any reasonable future earnings of plaintiff, and further reduce the entire amount of future lost earnings to its present cash value. In conclusion, plaintiff's counsel argued that the total out-of-pocketbook loss to plaintiff until the age of 65 was close to $200,000.

After deliberations, the jury returned a verdict in favor of plaintiff and against both defendants in the amount of $250,000. Following the denial of post-trial motions, the instant appeals were prosecuted.

Each defendant initially contends that a judgment upon the issue of liability to the plaintiff should have been entered in its favor as a matter of law. Defendant General Mills predicates its contention upon three arguments; first, that plaintiff was contributorily negligent in jogging into a line of moving boxcars in order to avoid a shallow depression in the ground; second, that plaintiff was contributorily negligent in failing to previously observe that the plug type boxcar door was not closed and locked; third, that the proximate cause of the accident was the intervening act of Harry Olsen, the engineer, in driving the plug type boxcar into plaintiff when he was in plain view and when the train could have been stopped before plaintiff was struck. Defendant Belt Railway's contention is predicated upon the dual argument that the accident was the sole result of the negligence of defendant General Mills in failing to secure the boxcar door and in distracting plaintiff by the actions of its supervisor, Roy Uddman; and that the evidence cannot support a conclusion that the act of Harry Olsen was the intervening proximate cause of the occurrence. We disagree with the contentions of both defendants.

■■■ Plaintiff's complaint charged defendant General Mills with common-law negligence. In such cases the appropriate test to determine whether a jury question is presented under the evidence is whether all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.) On the other hand, the plaintiff's complaint charged defendant Belt Railway under the provisions of the Federal Employers' Liability Act (45 U.S.C. § 51). Under that Act, judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry of whether the conclusion might reasonably be drawn from the evidence that the negligence of the employer played any part, however slight, in producing the employee's injury. (*Rogers v. Missouri Pacific R. R. Co.* (1956), 352 U.S. 500, 1 L.Ed.2d 493, 77 S.Ct. 443.) In light of the foregoing standards, the evidence presented at trial was sufficient to establish a jury question

as to the respective liability of each defendant to plaintiff and that neither defendant was entitled to a judgment as a matter of law.

Defendant General Mills argues that plaintiff was contributorily negligent as a matter of law in jogging into a moving train merely to avoid a shallow depression in the ground. The evidence of record does not support such argument. Plaintiff testified that he alighted from the moving train at about 1 or 1½ boxcar lengths from the northwest corner of the warehouse; that he had to jog along with the train in order to keep his momentum from causing him to fall. He stated that after a few steps he came upon a hole in the ground, and in an effort to avoid it he stopped, then backed up to his left. Boxcars vary in length from 40 to 60 feet. The evidence established that a construction piling excavation was located approximately 48 feet west of the warehouse and 2 feet south of track No. 6, an excavation estimated to be 6 feet in diameter and 30 feet deep. The location of this excavation would place it in the general area where, according to plaintiff's testimony, he got off the train. The assertion that he had tried to avoid merely a shallow depression is premised on plaintiff's estimate during cross-examination that the hole was about 8 to 10 inches in depth. However, he had testified just previously that he did not know the depth of the hole and only made an estimate after being pressed by counsel for defendant General Mills. By moving to the left to avoid the hole, plaintiff did move closer to the trial, and he testified that he knew it was dangerous to be too close to a moving train. Yet, plaintiff stated that he alighted from the train prematurely as a safety precaution when Roy Uddman came out of the warehouse waving his arms and shouting at him.

Plaintiff was an experienced switchman, having worked in close proximity to moving trains for 11 years. He testified that he knew he had not moved so close to the train to have been struck by the boxcar itself, because that would have caused a brushing blow which did not occur. Further, Harry Olsen had stated in his accident report that it was the door of the boxcar rather than the car itself which had struck plaintiff. At this juncture, it was not conclusively established by the evidence that plaintiff either moved so close to track No. 6 as to have been struck by a properly locked plug type boxcar, or that in moving to his left he reacted unreasonably to an allegedly shallow depression in the ground. Moreover, his response to Roy Uddman's actions should not be judged in hindsight, but should be measured by what a reasonable man would have done in similar circumstances. (*Skala v. Lehon* (1930), 258 Ill.App. 252.) We do not believe that a conclusion that plaintiff was contributorily negligent as a matter of law in this regard was warranted under the

evidence. The issue was correctly allowed to remain with the jury as one of fact for their determination.

Defendant General Mills argues that plaintiff was contributorily negligent as a matter of law in having previously failed to observe that the plug type boxcar was not closed and locked. Again, the evidence does not support the argument. First, it was customary for the car cooper employee of defendant General Mills to close and lock the doors of boxcars which were to be moved. It was the duty of Wilbur Patterson, the conductor—and not that of plaintiff—to inspect the boxcars and determine if the doors were closed and locked prior to beginning any move. Patterson testified that on the date of the accident he made such an inspection but did not see any open doors. Plaintiff testified that he did not see the plug type boxcar opened and unlocked prior to the accident. He further stated that on the return trip into the plant he rode on the second car from the engine and was looking in the direction in which the train was moving. The boxcar was coupled immediately in front of the engine. Track No. 6 curves to the left at the point where the accident occurred.

■■ Roy Uddman testified that after the accident he photographed the door of the plug type boxcar and that at the time, the door was unlocked with the locking handles hanging down flush against the side of the door. The evidence could give rise to the inference that while the door may have been open and unlocked from the beginning of the move, centrifugal force created by the boxcar's negotiating the curve may have lifted the locking handles away from the side of the door or caused the door to protrude out on the door rail some 8 to 10 inches from the side of the boxcar. Before reaching the curve the door might have been unlocked and yet unnoticed by the crew, especially plaintiff who was under no duty to check it, and who had no particular reason to believe that all doors were not closed and locked. From the record, we cannot say that plaintiff's failure to observe that the instant door was open prior to the accident was contributory negligence as a matter of law.

● 4    Defendant General Mills finally argues that Harry Olsen furnished the proximate cause of the accident; and that Olsen's act of driving the train into plaintiff when the later was in plain view and when the train could have been stopped before he was struck broke any causal connection between the alleged negligence of General Mills and plaintiff's injury as a matter of law. Here again, there is a lack of evidentiary support for such a conclusion. It is amply demonstrated in the record that Harry Olsen had difficulty in recalling the events surrounding the accident. While he had stated in both his testimony and in his written

accident report that he saw the plug type boxcar door strike plaintiff in the back and that the train could have been stopped in a few feet, it is unclear from the record when he first observed that the door was in fact about to strike plaintiff. At the time, the train was negotiating a curve to the left. Olsen stated that the boxcar and the engine were on this curve making the turn immediately before the accident. Defendant General Mills assumes by its argument that Olsen had a clear view of the scene sufficiently in advance of the accident to have anticipated it and taken steps to avoid it by stopping the train. The assumption upon the instant record is speculative at best and insufficient to warrant the entry of a judgment in favor of defendant General Mills as a matter of law.

■■■ Defendant Belt Railway argues that it was entitled to a judgment as a matter of law because the negligence of defendant General Mills was the sole cause of the accident in failing to secure the door and in distracting plaintiff through the actions of its supervisor; and further, that the acts of Harry Olsen cannot be deemed to be the proximate cause of the occurrence. It is to be recalled that in order for plaintiff to recover from defendant Belt Railway there need only be evidence from which a reasonable conclusion might be drawn that the negligence of his employer played some part, however slight, in bringing about his injury. (*Rogers v. Missouri Pacific R. R. Co.*) Moreover, under the Federal Employers' Liability Act, the fact that a third party's negligence may also have been a concurring factor in producing the injury does not defeat recovery against the employer. (*Pitrowski v. New York, Chicago & St. Louis R. R. Co.* (1955), 6 Ill.App.2d 495, 128 N.E.2d 577.) It has previously been held that the evidence of record was insufficient to warrant a conclusion that the acts of Harry Olsen constituted the proximate cause of plaintiff's accident. Likewise, the instant record is also insufficient to warrant a conclusion that defendant Belt Railway was entirely free from negligence as a matter of law. In the plaintiff's complaint one of the negligence counts alleged that defendant Belt Railway moved, or permitted to be moved, the plug type boxcar when the door was not closed and locked. At trial, Wilbur Patterson testified that it was proper procedure not to move boxcars unless all doors are closed and locked; and that it was a part of his duties as conductor to inspect a line of boxcars prior to their being moved to determine if all doors were closed. Patterson stated that on the day of the accident he walked down the line of boxcars on track No. 6 before the train pulled out of the plant, but did not see any open doors. The evidence, however, establishes that immediately after the accident the door of the plug type boxcar was found to be open and unlocked. A reasonable conclusion might

be drawn that Patterson carelessly inspected the line of boxcars so as to fail to observe that the door of the plug type boxcar was open and unlocked. It is obvious that a careless inspection of the boxcar in question could be considered to have played a part in producing plaintiff's injury. The trial court properly allowed the issue of defendant Belt Railway's liability to be determined by the jury.

■■ Having determined that neither defendant was entitled to a judgment as a matter of law, we next consider the numerous allegations of trial error raised by defendant General Mills. Defendant contends that the trial court erred in admitting into evidence five posed photographs of the plug type boxcar without sufficient foundation and in the absence of any evidence that the locking handles protruded away from the side of the door at the time of the accident. The admissibility of photographs into evidence is a determination within the discretion of the trial court, and its decision in that regard is not subject to review unless an abuse of discretion is clearly shown. (*Pitrowski v. New York, Chicago & St. Louis R. R. Co.*) Photographs, as well as plats, drawings and diagrams, which illustrate the subject matter of testimony are admissible into evidence for the purpose of portraying a particular situation, explaining certain testimony, or enabling the jury to apply the testimony more intelligently to the facts shown. (*Department of Public Works & Buildings v. Chicago Title & Trust Co.* (1950), 408 Ill. 41, 95 N.E.2d 903.) A proper foundation for the admission of a photograph is established when a witness identifies it as a correct representation of certain facts relevant to the issues in the case; and the witness need not be the taker of the photograph or know of the time or condition of the taking. *Brennan v. Leshyn* (1964), 51 Ill.App.2d 132, 201 N.E.2d 167.

In all, six photographs of the plug type boxcar were admitted into evidence in the instant case. One photograph was taken by Roy Uddman after the accident; the other five were supplied to plaintiff by defendant Belt Railway, one of which portrays the locking handles on the door of the boxcar protruding from the door at approximately a 30-degree angle. The remaining four depict the plug type boxcar, its door, and the locking handles in various views when in a locked and unlocked position. At trial, an employee of defendant Belt Railway testified that, aside from the positioning of the locking handles away from the door in one of the photographs, the one supplied to plaintiff by defendant Belt Railway accurately showed the plug type boxcar in question.

■■ The witness stated that the photographs were taken some time prior to October 1969, probably in one of the Kansas City railroad yards. On cross-examination he stated that he did not know the exact time or place the photographs were taken or the state of repair of the boxcar at

the time. Over objection of defendant General Mills, the trial court admitted all five photographs into evidence for the stated purpose of exhibiting to the jury the door mechanism and its operation. We feel that the foundation for the admission was clearly adequate, regardless of whether the identifying witness knew details of the taking of the photographs or the condition of the boxcar at the time. The witness stated that except for the positioning of the locking handles in one photograph, they all accurately portrayed the plug type boxcar. If the purpose of admitting them was merely to illustrate to the jury the appearance of the boxcar and its door, rather than to depict its alleged actual condition at the time of the accident, the state of repair of the boxcar at the time the photographs were taken would not preclude their admissibility. The photographs were admitted for just such a purpose, of doing no more than illustrating the appearance of a complex mechanism which could not be easily envisioned by oral description and concerning which the jury received a great deal of testimony.

Four of these photographs are not challenged by defendant General Mills as being posed in a misleading manner. The one which portrays the locking handles protruding away from the door is so challenged, but it is not a posed photograph since it was not admitted to show the actual position of those handles at the time of the accident. Rather, that photograph was admitted for the purpose of indicating that it was physically possible that the handles could be moved from a position which was vertically flush against the side of the door to one where they protruded out and away from the door. We hold that the trial court did not abuse its discretion in admitting the five photographs into evidence.

■■ Defendant General Mills contends that the trial court erred in permitting plaintiff to testify concerning matters of a speculative nature. Specifically, it is argued that since plaintiff had testified that he had not seen what struck him in the back, it was error to permit him to offer a conclusion as to what that object must have been. Plaintiff was permitted to conclude, over the objection of defendant General Mills, that either the plug type boxcar door or the locking handles on that door must have been the object which struck him because a brushing blow, unlike the one actually received, would have resulted from his being hit by the plug type boxcar itself. We believe that this portion of plaintiff's testimony was properly admitted and falls within the ruling contained in *State Farm Mutual Automobile Insurance Co. v. Short* (1970), 125 Ill.App.2d 97, 260 N.E.2d 415, in which it was stated at page 104:

> "With reference to subjects on which opinions are usually formed without analyzing the reason for them or noticing their elements and where the witness is qualified to express such an

opinion by reason of his special knowledge or familiarity with the matter in question, he will be permitted to give his conclusion." In the instant case, plaintiff was an experienced switchman who had worked in close proximity to moving trains for some 11 years, and unquestionably had a special knowledge and familiarity with equipment connected with that employment. The trial court did not err in permitting him to state a conclusion based upon a coalition of the facts he observed in the occurrence, his knowledge of, and experience with, the subject matter involved.

■■■ Defendant General Mills contends that the trial court erred in admitting Harry Olsen's written accident report into evidence as past recollection recorded when Olsen had previously testified from memory. We disagree. The two primary requirements for the introduction of a writing into evidence as past recollection recorded are that the witness has no present independent recollection of the facts and that he is unable to refresh his recollection by a review of the writing. (*Noumoff v. Rotkvich* (1967), 88 Ill.App.2d 116, 232 N.E.2d 107.) When called by plaintiff to testify, Harry Olsen initially indicated that he had difficulty recalling the facts connected with the accident. He was then shown his written accident report in an attempt to refresh his recollection. While continuing to keep the report before him, Olsen testified concerning the events leading up to plaintiff's injury. During cross-examination by each of the defendants he repeatedly stated that his direct testimony was based upon what was contained in his report and that he had no independent recollection of the circumstances of the accident. The trial court admitted the accident report into evidence over the objection of defendant General Mills. We hold that no error arose from the introduction of this report into evidence. The record amply supports the finding of the trial court that Olsen had no independent recollection of the facts involved, and also that after reviewing his accident report Olsen still was unable to refresh that recollection. Further, no error arose from the fact that his direct testimony, as well as his written accident report, were both admitted into evidence. Under the "past recollection recorded" doctrine, where the witness has testified that upon examination of the written report he has no independent recollection of the matters contained therein, then such written report is properly admitted into evidence. *Wolfe v. City of Chicago* (1966), 78 Ill.App.2d 337, 342, 223 N.E.2d 231; *People v. Harrison* (1943), 384 Ill. 201, 51 N.E.2d 172; *People v. Hill* (1972), 6 Ill.App.3d 746, 286 N.E.2d 764.

■■ Defendant General Mills contends that the trial court erred in advising the jury of the alleged negligence charged against it in plaintiff's complaint by means of an overly argumentative issues instruction that

gave undue emphasis to plaintiff's evidence and theories. Defendant maintains that the issues instruction (Plaintiff's Instruction No. 32) violated the rule against prolixity and undue repetition in the formulation of such instructions, as set forth in *Signa v. Alluri* (1953), 351 Ill.App. 11, 113 N.E.2d 475. We do not feel that the giving of this instruction was improper. In *McGourty v. Chiapetti* (1962), 38 Ill.App.2d 165, 186 N.E. 2d 102, it was stated of *Signa*, at page 179:

> "In that case this court did not rule out the giving of an instruction on the issues of the case as made by the pleadings. On the contrary, it recognized that it was desirable to have such a statement. What was found objectionable in Signa v. Alluri, supra, was the practice of using repetitious and forensic phrases in pleadings so that the trial court in reading the instruction to the jury would appear to be arguing the case of the party who had prepared the pleading. The decision in that case held that the court should inform the jury of the issues made by the pleadings in a clear and concise manner, without repetition and without undue emphasis."

In *Signa*, the issues instruction was very long and repetitious, to the point of even devoting in excess of 500 words to just those counts of the complaint charging defendant with willful and wanton negligence. The *Signa* instruction further failed to advise the jury that the charges were denied by the defendant. In the instant case, Plaintiff's Instruction No. 32 listed the plaintiff's allegations of negligence on the part of defendant General Mills in 6 subparagraphs, totaling approximately 180 words. It concluded with 2 paragraphs totaling some 91 words which detailed defendant's denial of the allegations of the complaint. Moreover, a separate burden of proof instruction was also given to the jury which stated what plaintiff was required to prove in order to secure a recovery against defendant General Mills. Here the issues instruction was not prolix and did not unduly emphasize plaintiff's charges, but informed the jury in a concise manner, without unnecessary repetition, of the issues created by the pleadings. We hold that no error resulted from this instruction being given to the jury.

■■ Defendant General Mills further argues in its brief that in Plaintiff's Instruction No. 32 the use of the word "dangerous" in two of the subparagraphs charging negligence on its part was erroneously misleading to the jury. We need not reach the merits of this argument because it has been waived by the failure of defendant to object at the conference on instructions. (*Allen v. Howard Bowl, Inc.* (1965), 61 Ill. App.2d 314, 210 N.E.2d 342.) Defendant General Mills did not object to the word at the conference on instructions, but only contended that certain of the negligence subparagraphs were overly argumentative.

The final contention of trial error raised by defendant General Mills concerns the allegedly prejudicial closing arguments by counsel for plaintiff. Numerous errors are asserted, and each will be considered. Defendant General Mills argues that prejudicial error resulted in closing arguments when counsel for plaintiff read to the jury an uncertified transcript of plaintiff's testimony, which transcript further included testimony that had previously been stricken by the trial court. The record indicates, however, that plaintiff's counsel did not read from an uncertified transcript, but spoke extemporaneously to the jury of plaintiff's testimony, and even stated at one point that he was basing his arguments upon his own notes which he had reviewed the night before. Although he did allude to a certain portion of plaintiff's testimony which had been stricken, the objection of defendant General Mills to the reference was sustained. No objection was made to the remaining remarks of plaintiff's counsel concerning the testimony of plaintiff. As a consequence, any error arising from the remaining remarks was waived. *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.

■■ Defendant General Mills argues that prejudicial error resulted in closing arguments wherein counsel for plaintiff read to the jury Wilbur Patterson's accident report which had never been introduced into evidence. At trial, Patterson had testified from memory concerning his knowledge of the accident after refreshing his recollection with the accident report he had completed following the occurrence. Therefore, the jury was aware, prior to the closing arguments, of the substantive contents of the report. In closing argument, plaintiff's counsel began to read the report to the jury. Upon objection by defendant General Mills, plaintiff's counsel merely paraphrased the contents. Even if error, we do not believe that the repetition in closing argument of the information in the report was so prejudicial to defendant General Mills as to have affected the verdict of the jury against it.

■■ Defendant General Mills argues that prejudicial error resulted in closing arguments from the use by plaintiff's counsel of certain remarks of an invective nature in describing the trial tactics of counsel for defendant General Mills. The remarks complained of on appeal were those which charged that the tactics were "outrageous and unprofessional, slandering, terrible distortion, raising false issues, hitting pretty below the belt, and unfair." However, at trial, defendant General Mills objected only to the remarks using the words "outrageous and unprofessional," which objection was overruled by the trial court. Inasmuch as no objection was made by defendant General Mills, the waiver of error principle applies to the remaining remarks. (*Lindroth v. Walgreen Co.*) Concerning the characterization of "outrageous and unprofessional" to

which objection was made and overruled, we feel that it was made in reply to the improper remarks of counsel for defendant General Mills which charged that plaintiff's counsel was working in cooperation with counsel for defendant Belt Railway. It is well established that a party cannot provoke a reply to his own improper argument and then predicate error on that reply. (*People v. Hayes* (1962), 23 Ill.2d 527, 179 N.E.2d 660.) Being provoked by the improper argument of counsel for defendant General Mills, the characterization of "outrageous and unprofessional" cannot be held to constitute error.

Defendant General Mills argues that prejudicial error resulted from closing arguments wherein counsel for plaintiff stated to the jury that counsel for defendant General Mills had tried to create racial prejudice against plaintiff. Plaintiff's counsel had argued that counsel for defendant General Mills had asked the jury not to be prejudiced against anyone, yet he had attempted to create the utmost prejudice against plaintiff. The remark was obviously directed to defense counsel's allegation that a conspiracy existed between plaintiff and defendant Belt Railway. The present argument that the remark, in the context in which it was made was in reference to race, is without merit.

Defendant General Mills argues that prejudicial error resulted in closing arguments from a misleading reference made to the jury by plaintiff's counsel concerning a discovery order that had been entered in the case on October 28, 1969, which was never introduced into evidence. We disagree. Counsel for defendant General Mills had argued to the jury that collusion between the plaintiff and defendant Belt Railway had resulted in plaintiff's being supplied with posed photographs of the plug type boxcar. In response, plaintiff's counsel stated that the photographs were secured by means of the court order dated October 28, 1969, which directed defendant Belt Railway to produce the plug type boxcar for plaintiff's inspection, and that instead, the railroad had complied with the order by supplying its own photographs of the boxcar to plaintiff. We feel that counsel for defendant General Mills provoked the reference to the discovery order by improperly alluding to a possible conspiracy and collusion between the parties, specifically in regard to the photographs received from defendant Belt Railway, and therefore defendant General Mills cannot assert that the remarks concerning the order were error. (*People v. Hayes.*) Moreover, the present argument would also fail under the principle of waiver of error, in that no objection to the reference to the discovery order was made by defendant General Mills. *Lindroth v. Walgreen Co.*

■■ Defendant General Mills finally argues that prejudicial error resulted in closing arguments from counsel for plaintiff bringing to the

attention of the jury the comparative wealth of plaintiff and defendant General Mills. Again, we disagree. In his initial closing argument, plaintiff's counsel did not make a request for a specific sum of damages to compensate plaintiff. In the closing argument on behalf of defendant General Mills, its counsel repeatedly remarked that it was money that plaintiff was seeking, and that it was customary for attorneys representing plaintiffs to ask for a huge sum in hope of receiving an award as large as possible. In final closing argument, plaintiff's counsel stated that there was nothing wrong in seeking money damages to compensate for a loss; that defendant General Mills was also in business to make money; and that defendant General Mills could replace one of its warehouses, if necessary, but plaintiff could never replace what he had lost. The trial court overruled the objection of defendant General Mills to the statements concerning its financial position. Here, we feel that once again the remarks of plaintiff's counsel, which are asserted to be prejudicial, were invited by the prior argument of counsel for defendant General Mills that implied there was something odious about seeking money as compensation for an injury. The remarks of plaintiff's counsel were a reasonable response to that line of argument, and as such, cannot be considered to be error. *People v. Hayes.*

It is next contended by defendants General Mills and Belt Railway that the verdict is excessive. In addition, defendant General Mills argues that the jury, in determining damages, was misled by the absence of evidence concerning the present cash value of plaintiff's future lost earnings, and by the closing argument of plaintiff's counsel concerning the method by which those lost earnings should be calculated. We now consider whether the verdict is excessive.

The defendants contend that a $250,000 award, for what they describe as a nondisabling laminectomy, cannot be justified in light of the evidence of damages introduced by plaintiff, particularly, the evidence of past and future lost earnings, and that therefore, the size of the verdict can only be attributed to passion and prejudice by the jury. In support, defendant General Mills has included in its brief two appendixes which list examples of awards recovered in other cases involving injuries purportedly similar to those sustained by plaintiff. We believe that the defendants' contentions place undue reliance upon the evidence of plaintiff's lost earnings. He was entitled to full compensation not only for his past and future lost earnings, but also for his medical expenses, pain and suffering, disability, and those deprivations his injuries have and will continue to cause in activities unrelated to his work. Moreover, reference to awards recovered in other cases is of doubtful relevance to the inquiry of whether the verdict in the instant case is excessive. One wrongfully

injured by another should be permitted to secure a recovery based upon the evidence of his own particular loss, rather than by consultation of a schedule of previous awards. The proper standard of review where a verdict is challenged as excessive was stated in *Lau v. West Towns Bus Co.* (1959), 16 Ill.2d 442, 452-453, 158 N.E.2d 63:

> "However, it has long been the law in Illinois that the amount of a verdict is largely within the discretion of the jury. [Citations.]
>
> \* \* \* Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions. [Citation.]
>
> We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice."

■■■ The record reveals that plaintiff was 46 years of age at the time of the accident. Although a high school graduate who had attended three years of college, plaintiff's only experience at sedentary work was a brief period following his surgery when he was employed as a clerk and cashier in a bowling alley. The laminectomy left plaintiff with a permanent instability in the right leg and an inability to lift heavy weights. He had been employed as a switchman since 1955, but was unable to return to such position after his surgery. He had worked as a railroad steward for 10 years prior to becoming a switchman. Plaintiff testified that since his injury he had great difficulty in securing employment. Considering his age, work experience, and the physical limitations resulting from his accident, the jury could have reasonably inferred that he would not be considered very attractive from the viewpoint of a potential employer. Moreover, plaintiff testified that he has periodic pain in his right leg, takes two pain pills a day, and occasionally wears a back brace. His damages were in the first instance for the jury to determine. Each defendant filed a post-trial motion which in part requested a new trial on the basis that the verdict was excessive. The trial court denied those motions and such decision is entitled to great consideration and weight by this court. Although the verdict is admittedly large, we cannot say that the record demonstrates that its size could have been only the product of passion and prejudice on the part of the jury.

Defendant General Mills argues that the jury was misled in determin-

ing damages by the absence of actuarial evidence to illustrate how the present cash value requirement should be applied to plaintiff's future lost earnings. We disagree and further decline defendant's invitation to adopt the holding in *Ballantine v. Central Railroad* (3d Cir. 1972), 460 F.2d 540, that it is error to charge a jury with regard to future damages without present worth tables or other actuarial evidence being presented to guide their determination of the present cash value of such future damages. Plaintiff's Instruction No. 23 (IPI 34.04) sufficiently informed the jury that money damages for plaintiff's future loss must be reduced to present cash value. In Illinois, there is no requirement that actuarial evidence must be presented to guide the jury in how that determination is to be made. *Wells v. Web Machinery Co.* (1974), 20 Ill.App.3d 545, 315 N.E.2d 301.

Defendant General Mills also argues that the jury was misled in determining future lost earnings by the closing argument of counsel for plaintiff. Specifically, defendant General Mills asserts that plaintiff's counsel encouraged the jury to use an unrealistic base earnings figure by his reference to inflation and possible pay raises which plaintiff might have received; encouraged the jury to simply multiply plaintiff's remaining working life by his annual lost earnings without regard to their present value; and encouraged the jury to ignore the need to deduct potential future earnings of plaintiff from the award. We find that it is unnecessary to reach the merits of this argument as the instant record reflects that no objection was made to the remarks of plaintiff's counsel concerning how damages should be calculated. Any error which might have resulted from these remarks was therefore waived by defendant General Mills. *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.