THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ELMO GILBERT, Defendant-Appellant.
First District (5th Division)   No. 61163

Opinion filed March 3, 1978.

William H. Wise, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Mary C. Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This matter was remanded by the Illinois Supreme Court (*People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849) for the determination of issues not considered in our original opinion (*People v. Gilbert* (1976), 38 Ill. App. 3d 816, 349 N.E.2d 609). The facts have been sufficiently set forth in those opinions.

Initially, we examine the contention of defendant that two statements he made to the police were improperly received in evidence. The first appears in the testimony of Officer Gulley, who testified that he had received a report of a shooting in an apartment and, upon arrival, he saw defendant standing next to a body in the hallway with a trail of blood from the kitchen to the body. In response to Gulley's inquiry, defendant replied that he had been in the living room and the victim in the kitchen when he heard a "wham." Defendant argues this response was inadmissible because at that time he was being questioned as a suspect, with the focus having shifted from one of general inquiry to one of accusation, and that *Miranda* warnings were not given.

It is now well settled that *Miranda* warnings are not necessary where the police conduct a general, on-the-scene questioning as to facts surrounding a crime. (*People v. Parks* (1971), 48 Ill. 2d 232, 269 N.E.2d 484, *cert. denied* (1972), 404 U.S. 1020, 30 L. Ed. 2d 669, 92 S. Ct. 692.) In *Miranda v. Arizona* (1966), 384 U.S. 436, 477-78, 16 L. Ed. 2d 694, 725-26, 86 S. Ct. 1602, 1629, the Supreme Court stated:

"Our decision is not intended to hamper the traditional function

of police officers in investigating crime. * * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."

■■ Here, only a single question was asked by Officer Gulley, and there appears little doubt that it was asked to obtain information as to what had occurred. Moreover, the inquiry was made in the family apartment in the presence of his parents and brother, and neither before nor immediately after the statement did Gulley place any charges against defendant or ask him to remain in the apartment. Under these circumstances, defendant could not be said to be in-custody or otherwise deprived of his freedom of action in any significant way. Furthermore, there is no indication of the compulsion, danger, intimidation or trickery which the *Miranda* rule was designed to eliminate, and we believe that to extend the rule to the type of inquiry made by Officer Gulley would serve to distort the purpose and plain language of *Miranda*.

The other statement complained of was taken from defendant after he was given the *Miranda* warnings. He argues, however, that this statement was the tainted fruit of the improperly elicited first statement; that the *Miranda* warnings as given were inadequate; and that the record fails to show a clear waiver of his right to remain silent. We disagree.

First, as we have found no taint in defendant's first statement, this aspect of his argument need not be discussed further.

■■ Second, words which convey the substance of the *Miranda* warnings and the information which they require are sufficient without strict adherence to a ritualistic form. (*People v. Walker* (1971), 2 Ill. App. 2d 1026, 279 N.E.2d 23.) Here, the following was read to defendant:

"Required Warnings—No. 1: You have the right to remain silent; No. 2: If you choose not to remain silent, anything you say or write can and will be used as evidence against you in Court; No. 3: You have a right to consult a lawyer before any questioning, and you have a right to have a lawyer present with you during any questioning; No. 4: You not only have a right to consult with a lawyer before any questioning; if you lack the financial ability to retain a lawyer, a lawyer will be appointed to represent you before any questioning; and you may have the appointed lawyer present with you during any questioning."

Defendant views these warnings as inadequate because he was not additionally asked whether he could, in fact, afford an attorney or

whether he actually wanted an attorney during the interrogation. To the contrary, we believe the warnings as given were sufficient to apprise him of his right to the presence of an attorney during the instant interrogation and that this right could have been exercised even if he had no funds to retain private counsel. *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102.

Third, an express waiver of the right to counsel is not required. (See *People v. Hill* (1972), 6 Ill. App. 3d 746, 286 N.E.2d 764.)

> "The test is that there be a showing of a knowing intent to speak without counsel. Once the defendant has been informed of his rights and indicates that he understands those rights it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. [Citations.]" *People v. Brooks* (1972), 51 Ill. 2d 156, 164, 281 N.E.2d 326, 332.

■■ In the instant case, after each of the four *Miranda* warnings were read to defendant, he was asked whether he understood it and he replied that he did. After they were all read, he was asked, "Knowing this do you wish to give us any statement?" Whereupon, defendant rendered his account of the incident. As defendant has made no claim of mental deficiency or retardation, we believe his assertions that he understood his rights prior to giving the statement showed a knowing waiver of the right to remain silent.

For the reasons stated, we believe defendant's statements were properly admitted.

■■ Defendant next contends that the trial court erroneously admitted a shotgun, an expended shell and a gun case into evidence. We cannot agree. Evidence is improperly admitted if not connected to both the crime and the accused. (*People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.) A proper foundation for the introduction of an article into evidence may be laid either through its identification by a witness or through the establishment of a chain of possession. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742.) Where exhibits are sufficiently unusual in character to be susceptible to sight identification, proof of a chain of custody is not necessarily a prerequisite to admissibility. (*People v. Thompson* (1971), 133 Ill. App. 2d 184, 273 N.E.2d 30.) If there is no evidence of tampering, alteration, or substitution and the witness' identification has not been impeached, the evidence is admissible. *People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97.

■■ Here, the first policeman to arrive on the scene testified that he discovered a shotgun in a gun case in the apartment in close proximity to a pool of blood leading from the apartment to the victim's body in the

hallway. While on the scene, this officer handed the shotgun (which had black friction tape on its butt) to Officer Thomas who recorded the gun's serial number and extracted a shell which he placed in a plastic bag along with the gun case. Thomas then hand-carried these items to the crime lab, and they remained in his possession until he locked them away in the firearms section of the lab. It was Thomas who brought the evidence to court, and he identified the gun by its serial number and the tape on its butt. He testified also that the shell which he had extracted and placed with the gun case was in the same plastic bag which had been tagged by him and kept in his custody, except when it was under lock and key. Upon these facts and circumstances, we believe the witness adequately identified the exhibits and also established the chain of possession necessary for their introduction. Moreover, the evidence adduced at trial clearly connected the exhibits to the crime and to the accused, as it appears from defendant's pretrial statements that the shotgun was in the apartment he shared with the deceased when the shooting occurred and that they were alone. In addition, the evidence discloses that there were no signs of forcible entry into the apartment and that the victim's wounds were not self-inflicted. Therefore, we find that the exhibits were properly admitted into evidence.

Defendant's final contention is that he was not proved guilty beyond a reasonable doubt. The essential elements which must be established in a murder prosecution are death and a criminal agency causing the death. (*People v. Benson* (1960), 19 Ill. 2d 50, 166 N.E.2d 80.) Here, defendant admits proof of death but argues that the State failed to meet its burden of proving an appropriate mental state to establish defendant's criminal agency.

One commits murder when he:
> "[K]ills an individual without lawful justification * * * if, in performing the acts which cause the death:
>> (1) He either intends to kill or do great bodily harm to that individual * * *, or knows that such acts will cause death to that individual * * *; or
>> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual * * *." Ill. Rev. Stat. 1975, ch. 38, par. 9—1.

■■ The intent to take a life may be inferred from the character of the assault, the use of a weapon and other circumstances and, as stated in *People v. Muir* (1977), 67 Ill. 2d 86, 92, 365 N.E.2d 332, 335, quoting *People v. Coolidge* (1963), 26 Ill. 2d 533, 537, 187 N.E.2d 694, 697:
> " '[S]ince every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act the direct and natural

tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended.' "

■■ However, where as here a conviction is based on circumstantial evidence, it is essential that the facts proved be not only consistent with the guilt of the accused but they must be inconsistent with any reasonable hypothesis of innocence (*People v. Magnafichi* (1956), 9 Ill. 2d 169, 137 N.E.2d 256); but, the State is not required to establish guilt beyond the possibility of a doubt (*People v. Branion* (1970), 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213). Furthermore, "[W]hen a defendant elects to justify or explain his presence at or near the scene of a crime, or his connection therewith, he must tell a reasonable story or be judged by its improbabilities. [Citations.]" *People v. Harter* (1967), 86 Ill. App. 2d 461, 471, 230 N.E.2d 15, 20. Accord, *People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.

In the instant case, as stated above, the evidence showed that deceased and defendant were alone in the apartment at the time of the shooting; that a forcible entry of another could not have occurred; and that decedent's wound could not have been self-inflicted. In addition, it appears that defendant had been looking for deceased earlier that evening while concealing the shotgun under his trousers. Further, defendant testified that on the evening in question he was awakened at midnight and observed deceased carrying the shotgun through their apartment with the barrel pointed downward in the manner that a hunter would carry such a gun. Defendant said he then approached her from behind and, when he was close enough, reached out and took hold of the gun by its stock. At that instant, he said she swung her elbow back with an upward and backward motion and, in so doing, the gun struck the facing of a refrigerator door and discharged. This depiction by defendant of an accidental shooting appears to be in direct conflict with the 45-degree upward angle of the victim's wound.

■■ In a bench trial, the question of the credibility of the witnesses and the weight to be given their testimony is for the determination of the trial court, whose finding will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) Here, defendant was seven inches taller than deceased and, in view of his testimony that deceased was holding the gun with the barrel pointed downward and that she swung toward him with a backward and upward movement of her arm, the trial court could easily have believed that such action would serve to maintain the downward trajectory of the barrel and thus that it could not have produced a wound with a 45-degree upward angle. So, also, could the

trial court have believed that defendant's action in pulling the gun by its stock from the shorter victim would continue the downward trajectory of the barrel. Thus, the trial court could reasonably have found that the shooting was not accidental and that defendant was the only person who could have shot the deceased and, in doing so, intended to kill or cause great bodily harm to her. Consequently, we do not believe the evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.