REYNOLDS METALS COMPANY et al.,
Appellants and Cross-Appellees,

v.

Julius LAMPERT and Evelyn Lampert,
Appellees and Cross-Appellants.

No. 17941.

United States Court of Appeals
Ninth Circuit.

Nov. 15, 1963.

King, Miller, Anderson, Nash & Yerke, Fredric A. Yerke, Jr., and Clifford N. Carlsen, Jr., Portland, Or., and Gustav B. Margraf and W. Tobin Lennon, Richmond, Va., for appellants.

Koerner, Young, McColloch & Dezendorf, and Herbert H. Anderson, Portland, Or., for appellees.

Rhoten, Rhoten & Speerstra, Sam F. Speerstra, William B. Wyllie, Salem, Or., and Maxwell H. Elliott, Torrance, Cal., for amicus curiae Harvey Aluminum.

Eckert, Seamans & Cherin, Frank L. Seamans, and John H. Morgan, Pittsburgh, Pa., for amicus curiae Aluminum Co. of America.

Thomas C. Donaca, Portland, Or., for amicus curiae Assoc. Oregon Industries, Inc.

Frank G. Breuer, Portland, Or., for amicus curiae Georgia-Pacific Corp.

Oliver Malm and Daniel C. Smith, Tacoma, Wash., for amicus curiae Weyerhaeuser Co.

Before HAMLEY and DUNIWAY, Circuit Judges, and CROCKER, District Judge.

CROCKER, District Judge.

Appellants, Reynolds Metals Co. and Henry W. Shoemaker, petitioned for rehearing in banc, and were granted a rehearing limited to the question of punitive damages before the panel which heretofore acted in this case.

Motions of several firms for leave to file amici curiae briefs on the question of punitive damages were also granted.

The amici curiae briefs, however, were of little value as, for the most part, they present matters outside the issues of this case.

To bring this case into proper focus, it should be reiterated:

(1) That jurisdiction in this case is based on diversity of citizenship and that the federal courts must apply the law of the State of Oregon. Erie R. Co. v. Tompkins (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

(2) That the settling of fluorides from appellants' plant on appellees' property constituted trespass as a matter of law in the State of Oregon. Martin v. Reynolds Metals Co. (1959), 221 Or. 86, 342 P.2d 790.

(3) That the Supreme Court of Oregon has said that the jury may award punitive damages if " * * * the injury was done maliciously or willfully and wantonly or committed with bad motive or recklessly so as to imply a disregard of social obligations." Fisher v. Carlin (1959), 219 Or. 159, 346 P.2d 641.

In addition, it should be noted:

(1) That in Oregon a jury may award punitive damages if there was "evidence of malice or wilfull wanton disregard of the property rights of plaintiff or other aggravating circumstances." Hall v. Work (1960), 223 Or. 347, 354 P.2d 837, 366 P.2d 533.

(2) That Alvarez v. Retail Credit Ass'n of Portland, Oregon, Inc. (1963), 76 Or.Adv.Sh. 671, 381 P.2d 499, cited by appellants, does not overrule Fisher v. Carlin. In fact, it recognizes that there may be "other improper motives" than ill will "that make the aggravated wrong

one for which punitive damages may be allowed."

(3) That the Oregon legislature has not spoken on this subject.

■ The decision in this case is that under the law of the State of Oregon and the particular facts in this case the question of punitive damages should have been submitted to the jury, as the jury could reasonably have found that appellants had acted with wanton disregard of the property rights of appellees or other aggravating circumstances, *or* recklessly so as to imply a disregard of social obligations *or* other improper motive.

The particular facts that lead to this conclusion are,

(1) That appellants had knowledge that fluorides from their plant had caused injury every year since 1949 to gladiolus grown on appellees' property.

(2) That in 1957 appellants increased their production by putting more electricity into reduction cells which almost doubled the amount of escaping fluorides.

■ (3) That Paul R. Martin testified that on April 23, 1959, Mr. Shoemaker, Manager of appellants' plant, when asked why he didn't use better fluoride controls, said: "It is cheaper to pay claims than it is to control fluorides." The trial court erroneously instructed the jury to disregard this testimony but only after withdrawing the question of punitive damages from them. The credibility of this testimony was for the jury. O'Harra v. Pundt, 210 Or. 533, 310 P.2d 1110 (1957).

(4) That if permitted by the trial court Sigmund C. Schwarz would have testified that an electrostatic precipitator operated efficiently would remove 98 to 99 per cent particulate matter.

[3] Mr. Schwarz is a chemical engineer who for 36 years was Chief Chemist and Chemical Engineer for the Gas Co. in Portland, which installed electrostatic precipitators to clear up a serious atmospheric pollution problem. He was qualified in the general field and the trial court abused its discretion in refusing

his testimony. His lack of experience with electrostatic precipitators in the aluminum industry was a matter to be considered by the jury in determining his credibility and the weight to be given his testimony. Bratt v. Western Airlines, Inc. (10 Cir. 1946), 155 F.2d 850, 166 A.L.R. 1061; Sitta v. American Steel & Wire Division of United States Steel Corp. (6 Cir. 1958), 254 F.2d 12; John J. Fulton Co. v. Federal Trade Commission (9 Cir. 1942), 130 F.2d 85; Research Laboratories, Inc. v. United States (9 Cir. 1948), 167 F.2d 410.

After rehearing the question of punitive damages, the original decision in this case that the judgment of the trial court be reversed and the case remanded to the District Court for retrial not inconsistent with the opinion remains the decision of this court.