PAUL L. CRAFT *et al.*, Plaintiffs-Appellants, *v.* MELVIN ACORD *et al.*, d/b/a LARY'S TAVERN, *et al.*, Defendants—(IKE EICHOFF, d/b/a THE STAR-LITE INN, Defendant-Appellee.)

(No. 12239; ▮▮▮▮▮▮▮▮▮▮)

Fourth District—June 27, 1974.

Dukes, O'Rourke, Stewart and Meyers, Ltd., of Danville (C. W. Dukes and Kenneth J. Meyers, of counsel), for appellant.

Robert P. Moore, of Hayes & Moore, of Champaign, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This appeal arises out of litigation brought under the Illinois Dram Shop Act (Ill. Rev. Stat. 1969, ch. 43, ¶ 135) by Nancy Elaine Craft on behalf of certain minor dependents of one Paul Craft. The trial court entered judgment upon a jury verdict for defendant and the plaintiffs appeal.

On appeal, it is urged that the conduct of defense counsel was prejudicial; that his remarks in opening argument were not supported by evidence; that he failed to connect up certain evidence to relevant issues being tried; and that his remarks in closing were improper due to the failure to connect up the conditionally relevant facts with subordinate facts. Plaintiffs also attack the propriety of the expert testimony of Dr. Stan J. Bobowski and submitted that it should have been stricken.

The incident giving rise to this litigation occurred on March 19, 1971, when Paul Craft, who was allegedly intoxicated, engaged in a fight with Mr. Al Roberts. The altercation took place around 2:30 A.M. outside of Lary's Tavern. Mr. Craft sustained extensive head injuries as a direct result of the altercation.

With the incident at Lary's Tavern, Mr. Craft terminated a long drinking bout, which began approximately 9 A.M. on March 18, 1971, at the Starlite Inn, the defendant's tavern. Craft remained in the Starlite Inn until 2 P.M. He then returned home. He was allegedly in an intoxicated state at that time. He left home at approximately 2:45 P.M.

ostensibly to go to work, but ended up at Lary's Tavern sometime after 3 P.M. He remained there until 9:30 or 10 P.M. He then went to his place of employment and picked up his paycheck. He proceeded to go to another tavern and then to his brother's residence where he remained until 12:30 A.M. Thereafter he returned to Lary's Tavern.

Once at the tavern, Craft began to bother various patrons, including Mr. Roberts. He struck up a conversation with Roberts, the tone of which ranged from fraternization to belligerence. After Roberts left the tavern, Craft followed him, began calling him names, and eventually attempted to hit him, which resulted in Roberts defending himself and knocking Craft to the ground. According to Roberts, he had no idea why Craft assaulted him. Craft was unable to recall what precipitated his conduct.

In defendant's opening statement it was submitted that the proximate cause of the altercation between Craft and Roberts was not Craft's drunkenness but the rivalry between the two men who were purportedly dating Myrtle Newell. Counsel stated:

> "In addition to that we feel that the evidence will show that actually what the fight was caused by was the fact that Mr. Craft being a married man was going with another woman, Myrtle Newell. Mr. Roberts was, too, and they had a disagreement and that is what caused the matter."

During cross-examination of Roberts, defense counsel raised the existence of the rivalry that possibly existed between Craft and Roberts over Myrtle Newell. Counsel asked whether Craft became belligerent because he wanted Roberts to stop dating Myrtle Newell and that perhaps Craft had threatened him because he had been dating Mrs. Newell. Plaintiffs' counsel objected, contending that the reference made to Newell was reversible error. The court sustained the objection.

On cross-examination of Craft, defense counsel asked him whether he had stopped and seen Myrtle Newell the day in question. An objection was made by plaintiffs' counsel and defense counsel promised that "I am going to connect it up." The court permitted the answer to stand. Defense counsel continued this line of questioning.

In closing argument, defense counsel made repeated reference to the relationship in question and that this relationship and not intoxication was the probable cause of Craft's injury. On one occasion during the closing argument, plaintiffs' counsel objected to defense counsel's argument. Defense counsel stated:

> "Now, Walter Newell, who was the son of the girlfriend, Myrtle, and you remember this is the girl that Paul Craft didn't meet,

except testimony was that he had met her for a year or more in the back in the booth in the corner in the dark at Mr. Eichoff's Tavern."

Plaintiffs' counsel stated: "If the Court please, that wasn't the testimony and we object." The court sustained the objection. No other objection was made by plaintiffs' counsel during cross-examination.

Dr. Stan Bobowski was called in defendant's case-in-chief as an expert witness. The purpose of his testimony was to establish that the alcohol consumed by Craft in defendant's tavern could not have contributed to his intoxication in whole or in part at the time he received his injuries. After Bobowski was qualified as an expert witness, he was asked a series of hypothetical questions dealing with the oxidation rate of alcohol in a male 5'9" in height and weighing approximately 155 pounds who had consumed six to eight 12-ounce bottles of beer—each containing 15 milligrams of alcohol—from between 9 A.M. to 2 P.M. All the questions were objected to by plaintiffs' counsel on the grounds that they lacked proper foundation, were irrelevant and immaterial. Eventually, Bobowski testified that the alcohol consumed in the Starlite Inn from between 9 A.M. and 2 P.M. would not have rendered Craft intoxicated; and that the alcohol originally consumed would have been oxidized, thus eliminated from Craft's system at the time of the altercation in question. Plaintiffs moved that Bobowski's answers be stricken. This motion was denied by the court.

Plaintiffs argue that above-mentioned comment in opening argument by defendant was inflammatory and prejudicial. Therefore, the jury verdict and judgment thereon should be vacated.

■■ The general rule is that an assignment of error based upon alleged prejudicial conduct of counsel centering upon statements made in argument to the jury will not be considered unless objection to the alleged prejudicial argument had been made in the trial court. There is a well recognized exception to this rule and it is that:

> "If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon." *Belfield v. Coop*, 8 Ill.2d 293, 313, 134 N.E.2d 249.

Since plaintiffs failed to object when the offending remark was made, the alleged error was waived unless it can be cognizable under the aforementioned exception. We find that it cannot.

■■ The comment is not of such a character as to warrant the interven-

tion by the trial court in the absence of an objection. The statement was not designed or calculated to inflame or turn the jurors against plaintiffs. Rather its purpose was to give the jury a preview of what defendant intended to establish as the proximate cause of Craft's injuries.

Next, plaintiffs argue that prejudice to them was further compounded by defendant's examination of Roberts and Craft concerning the purported relationship that existed between Craft and Myrtle Newell. Plaintiffs submit that the defendant failed to connect up his inquiries to relevant matters in issue and thus rendered all the testimony on this collateral matter incompetent.

All questions dealing with the collateral matter were propounded by counsel for defendant to Roberts and Craft during cross-examination. Plaintiffs made a timely and specific objection when defendant cross-examined Roberts concerning these collateral matters. The objection was properly sustained. When defendant was cross-examining Craft concerning this issue, plaintiffs again made a timely and specific objection; but defendant promised to connect up the evidence in question and the trial court permitted defendant to continue. In defendant's case-in-chief, defense counsel inquired of one Carl Hixon, the bartender of the Starlite Inn, about prior meetings between Craft and Myrtle Newell that allegedly took place in the tavern. Plaintiffs failed to object to these questions.

■■ Defendant failed to connect up the questions put to Craft concerning his affair in the course of the cross-examination. Moreover, defendant did not successfully connect up the subject matter to relevant facts in issue during his case-in-chief. However, in each instant plaintiffs failed to move at the appropriate time that the testimony be stricken. The rule is clear that when the offering counsel neglects to supply his connecting proof, the burden is on the objecting party to renew his objection by requesting that all the evidence dependent upon the connecting proof be stricken. (6 *Wigmore on Evidence* § 1871 (3d ed.).) Plaintiffs failed to utilize their remedy and this failure amounted to a waiver of any error relating to this matter.

■■ Plaintiffs contend that defendant's final argument was inflammatory, not based on evidence presented, and amounted to prejudicial error. The rule is that plaintiff on review of an adverse verdict cannot complain the closing argument by defendant's counsel was prejudicial where no objection was made at trial and when the argument was not so inflammatory and prejudicial as to deteriorate the judicial processes. (*Bruske v. Arnold*, 44 Ill.2d 132, 254 N.E.2d 453.) The closing argument of defendant was not so inflammatory as to result in prejudice accruing to plaintiffs. Likewise, the plaintiffs objected only once during the course

of the closing argument; that objection was sustained by the trial court, thereby remedying any error that might have existed.

■■ Finally, we do not agree that the testimony of Dr. Bobowski was improper and should have been stricken. The witness, who has special knowledge, skill, experience, training or education so that his opinion will aid the trier of fact in a specialized area which is beyond the competence of persons of common experience, may given an opinion based upon his expertise. (*Pritchett v. Steinker Trucking Co.*, 108 Ill. App.2d 371, 247 N.E.2d 923.) While experts must be shown to have special knowledge or experience, the sufficiency of their qualifications is not an arbitrary matter but rests largely in the sound discretion of the trial court.

■■ The opinion of an expert must be based upon facts found in the record. The expert's opinion is not admissible when there is insufficient, undisputed physical evidence in the record to provide basic data needed for the application and principles of science or where the expert predicates his opinion upon matters not directly in evidence. *Abramson v. Levinson*, 112 Ill.App.2d 42, 250 N.E.2d 796.

The testimony concerning the meaning of certain blood alcohol levels are the proper subject matter for expert testimony and when relevant amount to significant evidence on a material issue in the case. *Weaver v. Lovell*, 128 Ill.App.2d 338, 262 N.E.2d 113.

■■ In *Merchants National Bank v. Elgin, J. & E.Ry.Co.*, 49 Ill.2d 118, 273 N.E.2d 809, the supreme court held that it was proper for the trial court to admit an expert opinion when it dealt with an ultimate issue of the case. The court reasoned that in a case when it was necessary for an expert witness to testify the trier of fact need not nor is required to accept the opinion of the expert concerning the matters testified to. It is certain that the expert testimony dealing with ultimate issues does not usurp the function of the trier of fact.

■■ In the case at bar, the trial judge exercised his discretion concerning the substance of the testimony of Dr. Bobowski. The court found that there was a presence of technical data, the interpretation of which was beyond the normal competency of the average juror. Likewise the trial court found that the expert had a special knowledge or skill which enabled him to evaluate the data presented at the trial and render it useful to the jury. It is also certain that the opinion of the expert was predicated upon admissible evidence found in the record—evidence that was supplied through counsel's foundation questions. Likewise the witness' ultimate opinion concerning the rate of oxidation of alcohol in the blood stream of the average man as hypothesized in the question and how it related to Mr. Craft was subjected to the rigors of cross-

examination and the ultimate scrutinies of the jurors who, under the rationale of *Merchants National Bank*, are free to accept or reject the opinion testimony.

Accordingly, the judgment of the circuit court of Vermilion County is affirmed.

Judgment affirmed.

SMITH, P. J., and SIMKINS, J., concur.