THE PEOPLE ex rel. WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant, v. STEELCO CHEMICAL CORPORATION et al., Defendants-Appellees.

(No. 59798;

First District (4th Division)—August 28, 1974.

William J. Scott, Attorney General, of Chicago (Lee A. Campbell, Kenneth J. Gumbiner, James I. Rubin, and Richard W. Cosby, Assistant Attorneys General, of counsel), for appellant.

Sherwin J. Stone and David C. Roston, both of Chicago (Lieberman, Levy, Baron & Stone, of counsel), for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of

Cook County. Plaintiff brought an action to enjoin the defendant from conduct which was alleged to constitute a continuing threat of air pollution and to seek a civil penalty for alleged violations of the Environmental Protection Act. Following a bench trial, the court entered judgment in favor of the defendant.

The issues presented on appeal are (1) whether the trial court committed prejudicial error in excluding expert testimony tendered by the plaintiff; and (2) whether the findings on the issues of permanent injunction and penalties denied plaintiff due process of law.

K. A. Steel Chemicals, Inc., was incorporated in 1952. Subsequently a second corporation, Steelco Chemical Corp., was formed. It was merged into K. A. Steel Chemicals, Inc., on June 1, 1973. As a result, there is only one defendant in this action. (The merged corporation will hereinafter be referred to as "Steelco".) Mr. Kenneth A. Steel is the president of Steelco, and he and his wife own all of its stock. Steelco's primary business is the sale of chemicals used for the purification of water and treatment of sewage. It sells chlorine, which it purchases in bulk and transfers to steel cylinders, and manufactures and sells sodium hypochlorite and ferric chloride. Steelco began to manufacture sodium hypochlorite in December, 1962. Six or seven years later it constructed the L-9 and L-10 reactors and the connected tanks, equipment, and buildings presently used in the manufacture of sodium hypochlorite.

On July 30, 1973, at approximately 9 P.M., Gregory Meisenbach was working the sodium hypochlorite reactors at Steelco. Upon arriving for work, Meisenbach had been given information on the purported status of the L-9 and L-10 reactors with respect to the sodium hypochlorite production systems. The information was transmitted to Meisenbach by William Sennett, the shift foreman on duty. The information conveyed by Sennett improperly reversed the actual status of reactor tanks L-9 and L-10. Around 10:40 P.M. Meisenbach began chlorinating tank L-10. He did not test the excess alkalinity of tank L-10, relying on the status report given him by his foreman. As a result, the tank became overchlorinated and chlorine gas was released into the atmosphere. As a result of the chlorine emission from the defendant's facilities, 15 persons were given medical treatment or hospitalized.

On July 31, 1973, plaintiff filed a complaint for injunctive relief praying that defendant immediately be enjoined from causing air pollution; that a hearing be set to determine the facts regarding the case; and that at said hearing the court permanently enjoin the defendant from causing air pollution. Coinciding with the filing of its complaint, plaintiff filed a motion for a temporary restraining order enjoining defendant from operating its facilities until the source of the chlorine discharge was

identified and controlled. A hearing on plaintiff's motion was held on the afternoon of July 31, 1973. At the hearing the court entered an order which granted the temporary restraining order, provided for inspection of defendant's premises by personnel from the Illinois Attorney General's office and the Illinois Environmental Protection Agency, and scheduled a hearing for August 3, 1973. By agreement of the parties and the court, the hearing was rescheduled for August 10, 1973, in order to permit a full-scale investigation at defendant's plant by plaintiff's experts.

On August 8, 1973, following the plant investigation by plaintiff's experts, Dr. William Langdon and Mr. Howard Chinn, the plaintiff filed an amended complaint for injunction and penalties, alleging that defendant's sodium hypochlorite production system contained "severe operational deficiencies." Plaintiff's amended complaint prayed that the defendant be immediately and permanently enjoined from operating its sodium hypochlorite production system. In addition, the amended complaint prayed that the trial court, after hearing all the evidence, enter an order imposing penalties against the defendant.

On August 10, 1973, the hearing on plaintiff's amended complaint commenced. In support of its contentions regarding the "severe operational deficiencies," plaintiff called Dr. William Langdon, a Ph.D. in chemical engineering and a professor of chemical engineering at the Illinois Institute of Technology, and Mr. Howard Chinn, a registered professional engineer, to give expert testimony. After preliminary and *voir dire* examination, the trial court excluded the testimony of plaintiff's two expert witnesses on the ground that they had no experience in connection with the design, construction or operation of an industrial sodium hypochlorite facility.

On August 24, 1973, at the close of all the evidence, the trial court ruled against the plaintiff on all counts and dismissed the amended complaint.

The plaintiff contends the trial court committed prejudicial error in excluding the testimony of plaintiff's proffered expert witnesses. In support of its allegations that severe operational deficiencies existed at defendant's plant, the plaintiff offered the testimony of Dr. William Langdon and Mr. Howard Chinn. The record reveals that Dr. Langdon is a professor of chemical engineering at the Illinois Institute of Technology in Chicago, having received a Bachelor of Science, a Master of Science, and a Ph.D. in chemical engineering, all from the University of Illinois. From 1943 to 1949, as an assistant professor at the University of Illinois, Dr. Langdon taught chemical engineering with special emphasis on design and installation. From 1949 to 1955, he was employed by the engineering firm of Graham Crowley and Associates as vice-president

and director of research. From 1955 to 1968, he was a research engineer and was employed as an engineer with the Armour Research Foundation (presently called the Illinois Institute of Technology Research Institute). Dr. Langdon currently designs various types of equipment involved in chemical engineering and processes, and has designed, installed, operated, and tested over 25 complete pilot plants utilizing hazardous chemicals. The trial court refused to hear the testimony of Dr. Langdon on the ground that he had no experience in the design, construction, and operation of a plant manufacturing sodium hypochlorite. The record, with respect to Mr. Howard Chinn, shows he is a registered professional engineer. He has been employed since 1971 in the environmental-control division of the Attorney General's office, most recently as the division's chief engineer. From 1952 to 1959, Mr. Chinn was engineering project manager for the Vern E. Alden Consulting Company, where he supervised engineering design projects and was engaged in various projects related to the field of air-pollution control. From 1959 to 1960 he was a project engineer with MacDonald Engineering Company, where he worked on various projects in the field of particulate-air-pollution control. From 1960 to 1961, as the chief specifications engineer for the Sumner Sollitt Company, he supervised and coordinated the preparation of engineering specifications for the design and construction of industrial plants. From 1961 until 1971, Mr. Chinn worked for the engineering consulting firm of Sturm Engineers, where he was involved with various projects for the control or prevention of air pollution, including particulate and solvent vapor emissions. The trial court excluded the testimony of Mr. Chinn on the same ground used to exclude the testimony of Dr. Langdon, namely, the lack of experience in dealing with a plant manufacturing sodium hypochlorite.

■■ We believe plaintiff's witnesses were qualified to testify and the trial court abused its discretion in excluding their testimony. (*Moren v. Samuel M. Langston Co.* (1968), 96 Ill.App.2d 133.) The test for the admissibility of expert evidence or the qualifications of an expert witness was succinctly stated in *Bollmeier v. Ford Motor Company* (1970), 130 Ill.App.2d 844, 849, wherein the appellate court, quoting from the decision in *Mahlstedt v. Ideal Lighting Co.* (1915), 271 Ill. 154, 171, said:

> " 'Expert evidence is admissible when the witnesses offered as experts have peculiar knowledge or experience not common to the world, which renders their opinions founded on such knowledge or experience an aid to the court or jury in determining the question at issue. * * *' "

In *Bollmeier,* an expert witness was proffered to testify concerning automobile steering mechanisms. The automobile involved in the case was

a Ford Thunderbird. While the expert witness had never worked on a Thunderbird steering mechanism, he had worked on and was familiar with other automobile power-steering components as well as other hydraulic equipment. The appellate court ruled that the trial judge abused his discretion in rejecting the opinion of the witness. The court stated:

> "We believe the witness was shown to have sufficient experience and knowledge with respect to automobiles and other types of equipment to qualify as an expert."

An evaluation of the record in the instant case clearly establishes that plaintiff's expert witnesses possess qualifications sufficient to meet the requisites of competency for an expert. They have extensive knowledge and experience in the general fields of chemical engineering, industrial design, and the prevention and control of air pollution. None of these areas is a matter of common knowledge, and the opinions of Dr. Langdon and Mr. Chinn, founded on such knowledge and experience, would have been an aid to the court in determining whether severe operational deficiencies existed at defendant's plant.

In *Reynolds Metals Co. v. Lampert* (9th Cir. 1963), 324 F.2d 465, a case involving a factual situation similar to the case at bar, the neighbors of an aluminum-production plant sought actual and punitive damages on the ground that fluorides emitted from the plant had damaged vegetation on their property. The district court refused to allow an expert witness to testify to the extent to which the fluoride emissions could have been controlled by the use of an electrostatic precipitator, on the ground that the witness had no background in the use of electrostatic precipitators in the aluminum industry. The witness was a chemical engineer who for 36 years had been chief chemist and chemical engineer for a municipal gas company which installed electrostatic precipitators. The reviewing court held the trial court abused its discretion in excluding the testimony since the witness was qualified in the general field. The court said:

> "His lack of experience with electrostatic precipitators in the aluminum industry was a matter to be considered by the jury in determining his credibility and the weight to be given his testimony." (324 F.2d at 467.)

Likewise in the present case, the fact that plaintiff's expert witnesses had never designed, installed, or operated a plant which manufactures sodium hypochlorite could affect the weight to be given their testimony, but certainly should not affect its admissibility. In view of the dangerous nature of the plant operations of the defendant, and for the protection of the general public, we believe it was the duty of the trial court to make certain that the plant contained every possible safety factor. For

that reason, the testimony of plaintiff's qualified expert witnesses should not have been excluded.

■■ The plaintiff also contends the court findings on the issues of permanent injunction and penalties denied the plaintiff due process of law. We believe the question of whether a penalty should be assessed is properly a matter left to the discretion of the trial court. Inasmuch as we deem it necessary to reverse and remand this cause for a new trial, the question of a penalty, if any, should be considered after hearing all of the evidence.

There seems to be a great deal of confusion on both sides in this cause as to whether the hearing which commenced on August 10, 1973, was for the issuance of a temporary or a permanent injunction. We believe the question of temporary or permanent relief can be clarified and resolved at a new trial.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

BURMAN and JOHNSON, JJ., concur.