**David Michael RILEY, Respondent,**

v.

**Dianna Lou RILEY, Appellant.***

**No. WD 30737.**

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1980.

---

*\* Editor's Note*: The opinion of the Court of Appeals of Missouri on motion for rehearing in *Ingle v. Illinois Central Gulf Railroad Company*, published in the advance sheets at this citation (603 S.W.2d 32), was withdrawn from the bound volume and will be republished with the original opinion.

Charles W. Gardner, Lee's Summit, for appellant.

Arthur A. Benson, Kansas City, for respondent.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

KENNEDY, Presiding Judge.

The marriage of David Michael Riley and Dianna Lou Riley was dissolved by decree of the Circuit Court of Jackson County on June 30, 1978. They joined in a "motion to vacate judgment filed July 28, 1978, in which they requested also that any and all quitclaim deeds purportedly executed by each party" be set aside. The quitclaim deeds were one from Dianna to David in pursuance of their property settlement agreement, and a later one from David to his attorney, Donald L. Allen, in settlement of an indebtedness for attorney's fees. The property conveyed was the Rileys' residence in Blue Springs.

The court, after a hearing on the motion on August 4, denied the same.[1] (The court announced the ruling from the bench at the conclusion of the hearing on that date, but a written order overruling the same was signed and filed as of August 25, 1978.) Attorney Allen was not a party to the proceeding, although he was present, cross-examined the Rileys, and himself called a witness.

From the order overruling their motion to vacate judgment, Dianna, respondent below, has appealed. Petitioner David did not appeal, and in this court is denominated "respondent". In his brief in this court he joins with the appellant in urging reversal of the trial court's order overruling this motion.

The case began with David's filing a petition for dissolution of marriage on October 15, 1977. He was represented by attorney Donald L. Allen. An "answer and petition" was filed in behalf of Dianna by attorney Charles W. Gardner. While the case was pending, David and Dianna became reconciled and resumed living together. They lived together from January 1 to April 24, 1978, at which time they again separated. Dianna notified her attorney of the fact of their reconciliation shortly after she and David resumed living together. David and

---

1. We treat the case as an independent equitable proceeding, rather than as an after trial motion. *See State ex rel. Campbell v. Anderson,* 536 S.W.2d 200 (Mo.App.1976); *Korn v. Ray,* 434 S.W.2d 798 (Mo.App.1968); *Edwards v. Rovins,* 322 S.W.2d 139 (Mo.App.1959); *Cleary v. Cleary,* 273 S.W.2d 340, 345 (Mo. 1954).

Dianna decided, according to Dianna, after the plans for divorce were resumed, "that if we both went through the same attorney that the dissolution would be faster and we wouldn't have the problems we had before". Dianna went to see Mr. Allen, who had filed David's petition. Apparently the original suit, commenced in October, 1977, was still pending. Mr. Allen agreed "that it was much better". Dianna testified: "I told him at the time that if the papers, you know, everything went right, that I would sign over the house to my husband so that he could sell it, pay off the bills and do whatever, and that I would also sign a quit deed of trust. He told me that he would have it drawn up, that everything would be done right."

On another visit to the Allen office, in May, Dianna signed a quitclaim deed, conveying her interest in the parties' residence to David. On the same day she signed a settlement agreement which gave to each party a motor vehicle and provided that they were to pay the respective mortgages thereon; divided up the household furnishings; and gave the husband the family residence, and required him to pay "the outstanding mortgage thereon". It provided that neither party should receive maintenance; gave Dianna the custody of the two minor children of the marriage; provided for visitation by David; provided for payment by David to Dianna of $100 per month child support; and provided that David must pay Mr. Allen his attorney's fees.

Dianna was advised by Mr. Allen's secretary that it was not necessary for her to appear in court for the dissolution.

On June 30, according to the recital of the decree of dissolution, David appeared in person and by his attorney, Mr. Allen. The decree recited that Dianna made default. The court approved the separation agreement and granted the decree of dissolution.

Six days after the dissolution had been granted, Dianna learned that David had conveyed the house to Mr. Allen for attorney's fees.

Dianna testified that the house was worth $40,000. It was encumbered by a first mortgage of $20,000, and a second mortgage, incurred for the construction of a swimming pool, of $6,000. Dianna testified that she "figured" that when she conveyed the house to her husband he would sell it and pay the bills, except for the two car mortgages, which had been contracted by the two of them during their marriage.

At the time of the dissolution the parties were five months delinquent in their mortgage payments and the mortgagor was threatening foreclosure.

David testified that he executed the quitclaim deed to Mr. Allen on June 29, the day before the dissolution was granted. David had had the property on the market for a period of three weeks, at a price of $37,000, but had been unable to sell it, and had not received any offers. David himself initiated the proposal to convey the house to Mr. Allen for attorney's fees. He had his brother call Mr. Allen to make that request. Mr. Allen responded favorably, and David then went to Mr. Allen's office and told him that he wanted to give him the house for the attorney's fees. Mr. Allen told David in a telephone conversation that he would take the house for attorney's fees and that he "would stick a few bucks in my back pocket", according to David's testimony.

After receiving title to the property, Mr. Allen paid off the second mortgage and paid the back payments on the first mortgage.

After Dianna and David had seen Mr. Korth, the attorney who filed for them the motion to vacate judgment, on July 24, David twice contacted Mr. Allen to tell him that he "wanted no part of this deal" and had been acting under Dianna's coercion.

There is no suggestion in the record that the parties became reconciled and were motivated by a desire to have their dissolution of marriage canceled. They plainly wished only to divest Mr. Allen of his title to the property and have it revested in them. Dianna, in an affidavit which accompanied the "Motion to vacate judgment", said that "It was never her intention that the attorney who represented both of them should end up with the equity in the real estate

which is conservatively valued at approximately $12,000 and that she believes that she did not receive a just result in the dissolution but that she believes she was acting upon the advice of her attorney, Donald L. Allen." David's affidavit also has this house transaction for its target.

The only information we have on the amount of attorney's fees owing to Mr. Allen is contained in David's affidavit, who estimates the amount at $1,000, including Mr. Allen's services in the divorce case and also services earlier performed in connection with the erection of a swimming pool fence which was an alleged violation of some ordinance or zoning regulation of the City of Blue Springs.

The difficulties originated with Dianna's going to Mr. Allen after she and David had decided to pursue the dissolution and to use one attorney. These cases will continue to arise with embarrassing regularity so long as both parties are not represented or at least advised by independent adversary counsel. A review of our cases indicates a greater readiness on the part of our courts to grant relief to a dissatisfied party to a dissolution case who is advised by the other party's attorney. *Gardine v. Cottey*, 360 Mo. 681, 230 S.W.2d 731 (banc 1950); *Seymour v. Seymour*, 340 S.W.2d 652, 653 (Mo. 1960); *McCarty v. McCarty*, 300 S.W.2d 394 (Mo.1957); *Block v. Block*, 593 S.W.2d 584 (Mo.App.1979); *Daffin v. Daffin*, 567 S.W.2d 672 (Mo.App.1978). In this case Dianna said she thought Mr. Allen was acting as her attorney as well as David's. From the tenor of Mr. Allen's questions, he apparently did not consider himself as representing Dianna.

It was of course beyond the power of the court in this proceeding to set aside the deed from David to Mr. Allen. Mr. Allen is not a party hereto, and the court cannot determine any controversy between Dianna and David, or either of them, on the one hand, and Mr. Allen on the other. It could deal only with the controversy or should we say noncontroversy? between Dianna and David. Mr. Allen's presence in the courtroom, and his participation in cross-examining the witnesses, and even his putting on a witness, did not subject him to the jurisdiction of the court as a party. *State ex. rel. Eichorn v. Luten*, 515 S.W.2d 857, 859 (Mo. App.1974); *State v. Goodman*, 406 S.W.2d 121, 126 (Mo.App.1966); 20 Am.Jur.2d, Courts § 94 (1965).

As between Dianna and David, David actually has no complaint about the decree. His complaint is only against Mr. Allen, that he wound up with the house at a bargain price. Dianna has the same complaint against Mr. Allen, but as against David her only complaint is that the property settlement agreement did not contain a provision that the house was to be sold by David and the proceeds used by him to pay her and David's bills and that the house was not as a matter of fact sold and the proceeds so used, but was instead conveyed to Mr. Allen for his attorney's fee.

Setting aside the Dianna to David deed, the property settlement and the decree, without setting aside the David-to Allen deed (which as we earlier said was beyond the court's power in this proceeding), will not accomplish what the parties are seeking. The real target, both of Dianna and of David, is the conveyance to Mr. Allen. If they or either of them has a claim against Mr. Allen, it must be asserted in a proceeding to which he is a formal party. There a binding adjustment of the parties' mutual claims can be reached.

Mr. Allen is an indispensable party under Supreme Court Rule 52.04. In his absence complete relief cannot be accorded among those already parties. Furthermore, should the Dianna to David deed be set aside, his title to the Blue Springs residence may be put under a cloud. *Polette v. Williams*, 456 S.W.2d 328, 333 (Mo.1970); *Bulford v. Lucy*, 328 S.W.2d 14, 19 (Mo.1959); *Schaeffer v. Moore*, 262 S.W.2d 854, 858 (Mo.1953).

Neither party has raised the question of Mr. Allen's indispensability as a party, but this court has held that "the absence of a necessary party to an action is fundamental and jurisdictional to such an extent it must be considered by an appellate court."

*Shepherd v. Department of Revenue,* 377 S.W.2d 525, 528 (Mo.App.1964).

We therefore dismiss the appeal and remand the same to the trial court for further proceedings after joinder of Mr. Allen under Supreme Court Rule 52.04.

All concur.