FREDERICK CRABTREE, Plaintiff-Appellee, *v.* ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 78-425

Opinion filed June 11, 1980.—Supplemental opinion filed on rehearing September 26, 1980.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard M. Roessler, of counsel), for appellant.

John T. Pierce, Jr., of Pratt, Pierce, Bradford & Gitchoff, Ltd., of East Alton, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Frederick Crabtree, brought this action in the Circuit Court of Madison County under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1976)) to recover damages for personal injuries to his lower back sustained as a result of the negligence of defendant, St. Louis-San Francisco Railway Company. The jury returned a verdict for plaintiff in the amount of $315,000 upon which judgment was entered. From this judgment, defendant appeals.

Defendant contends that the trial court committed reversible error in admitting the testimony of Dr. Marshall Alperin and Raymond Stevens, expert witnesses called by plaintiff; that it was error to instruct the jury to determine the present cash value of lost future earnings without any evidence of the mathematical calculation required to assist the jury in performing this function; that counsel for plaintiff was allowed to argue improperly the loss of purchasing power of the dollar based upon inflationary trends; and that the trial court erred in refusing to instruct the jury that any damage award would not be subject to Federal or State income taxation.

On March 26, 1976, plaintiff, then age 39, was employed by defendant as a track laborer. On that day, while attempting to lift a keg of rail spikes by hand onto a rail push cart, plaintiff experienced a sharp pain and a tingling and burning sensation in the lower left side of his back. After plaintiff's injury was diagnosed as a ruptured disc at the L-5, S-1 level of the spine, he underwent surgery for removal of the disc. Plaintiff still experiences numbness and pain in his back and legs and has not worked since his operation.

Dr. Marshall Alperin, a specialist in internal medicine, testified on behalf of plaintiff. He testified that he has conducted pre-employment physical examinations since 1962 and is presently conducting such examinations for approximately 35 industries, including the Illinois Central Gulf Railroad. Over defendant's objection, Alperin was asked whether a man of plaintiff's age who had undergone a low back operation would be hired by any of the corporations for whom Alperin worked. Alperin replied that none of the corporations would hire plaintiff because of the increased risk that the problem might return and become a liability to the company. Also, over objection, Alperin was permitted to testify that for all 35 companies, plaintiff was "industrially unemployable."

■■ It is defendant's initial contention that the trial court erred in refusing to strike Dr. Alperin's testimony because, in defendant's opinion, plaintiff failed to establish the physician's qualifications as an expert on matters of hiring and employment practices in industry. Defendant's contention is without merit. Expert testimony is admissible when the witness offered as

an expert possesses peculiar knowledge or experience not common to the ordinary layman which renders his testimony an aid to the trier of fact. (*People ex rel. Scott v. Steelco Chemical Corp.* (1974), 22 Ill. App. 3d 582, 317 N.E.2d 729; *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 295 N.E.2d 329.) Thus, to lay a proper foundation for expert evidence, the expert must be shown to have that special knowledge or experience in the area about which he expresses his opinion. (See *Craft v. Acord* (1974), 20 Ill. App. 3d 231, 313 N.E.2d 515; *Abramson v. Levinson* (1969), 112 Ill. App. 2d 42, 250 N.E.2d 796.) What constitutes such requisite expertise rests within the sound discretion of the trial court. *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.

■■ Applying these principles, the trial court did not abuse its discretion in permitting the testimony of Dr. Alperin concerning the employment practices of the 35 companies for whom he worked. The record demonstrates that for the last 18 years Dr. Alperin has conducted pre-employment physical examinations for a variety of industries, including at least one railroad company. One may reasonably intimate that during the normal course of his employment for these companies Alperin has accumulated much expertise in the area of a worker's qualifications for and ability to perform in various industrial positions which would be beyond the common knowledge of an ordinary layman. It would therefore belie all common sense to hold that on the basis of the present record Alperin did not have sufficient knowledge or experience to know whether a physical injury, such as the one suffered by plaintiff, would seriously affect or preclude employment with one of the 35 companies. Although Alperin did not examine plaintiff and was not a physician for defendant, his medical training and extensive experience in conducting pre-employment physical examinations justified admission of his testimony concerning the availability of employment in certain industries for one in plaintiff's physical condition.

Defendant also contends that the trial court erred in admitting the expert testimony of Raymond Stevens apparently on the basis that plaintiff had failed to establish Stevens' competency as an expert witness and, in addition, had failed to lay a sufficient foundation of Stevens' knowledge of custom and practice in the industry. We disagree. Mr. Stevens was called by plaintiff to testify about the custom and practice of various railroads in lifting and moving kegs of rail spikes. He had worked as foreman of "maintenance and track" for the Illinois Terminal Railroad from 1934 to 1972. During this time, he was responsible for all maintenance and construction of the railroad tracks and was familiar with his company's custom of moving kegs of spikes. Mr. Stevens also testified that he has observed the workmen of the Terminal Railroad Association

of St. Louis and B & O Railroad many times and was familiar with the manner and custom in which they moved and lifted these kegs. On the basis of his experience and observations, he concluded that the customary method of lifting kegs of spikes was to utilize tie tongs, which method was safer than lifting by hand.

■■ The above testimony demonstrates that Stevens was well qualified as an expert on the operations of railroad maintenance and construction and was familiar with the custom and practice of three railroad companies. Although Stevens was not acquainted with the operations of defendant, it was proper for Stevens to testify as to the custom in the industry. Custom and practice are a proper subject of expert testimony in a tort case (see *McClure v. Suter* (1978), 63 Ill. App. 3d 378, 379 N.E.2d 1376) and may be proven, as in the present case, by testimony of specific conduct or habitual practice of other persons or railroads employing it, demonstrating a fairly regular course of conduct or practice. 2 Wigmore, Evidence §§379, 461 (Chadbourn rev. 1979).

■■ Defendant argues next that the trial court erred in allowing plaintiff's instruction 23a, which listed one element of damages as being "the present cash value of the earnings reasonably certain to be lost in the future" resulting from plaintiff's injury, where plaintiff failed to introduce any specific evidence of how the jury could reduce mathematically future lost wages to present cash value. The simple response to defendant's argument is that there is no requirement in Illinois that plaintiff introduce actuarial or statistical evidence to guide the jury in determining the present cash value of future lost earnings. (See *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 339 N.E.2d 381; *Wells v. Web Machinery Co.* (1974), 20 Ill. App. 3d 545, 315 N.E.2d 301; *Pennell v. Baltimore & Ohio R.R. Co.* (1957), 13 Ill. App. 2d 433, 142 N.E.2d 497.) It is the function of the jury to determine the amount of damages arising in the future by computing its present cash value, and in the present case, the jury was so instructed (Illinois Pattern Instructions, Civil, No. 34.04 (2d ed. 1971)). We note that although actuarial testimony is not a prerequisite to the giving of an instruction on present cash value, such evidence is often helpful to juries in reducing damages to monetary figures and could have been presented by defendant had it felt the necessity therefor. *Pennell v. Baltimore & Ohio Ry. Co.*

Defendant also contends that plaintiff's counsel committed reversible error during his closing argument when he argued, in effect, that the jury should consider future inflationary trends in determining the present cash value of future lost earnings. During closing argument, counsel told the jury that it was their responsibility to reduce future lost wages to present cash value. He indicated that in arriving at this figure the jury must determine what a dollar invested now will get in the future. He added

that "the dollar represents only one thing, and that's purchasing power." In explaining the meaning of the dollar's purchasing power, counsel told the jury to consider what the dollar was worth yesterday, what it is worth today and what it will be worth tomorrow.

■■ In *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 343 N.E.2d 207, we relied on *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 283 N.E.2d 230, *cert. denied* (1972), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322, for the proposition that this court will grant a new trial on the issue of damages on the basis of an allegedly inflammatory argument by counsel concerning the effect of future inflationary trends only where the record demonstrates that the verdict was the product of prejudice and not supported by "other proper evidence." A review of the record reveals ample support for the verdict. At the time of the crippling back injury, plaintiff, age 39, was earning $4.88 per hour. Had plaintiff been able to continue working, he would have been making $6.50 per hour at the time of trial as a result of pay increases. Plaintiff has only a high school education; is considered unemployable for many industrial positions; and continues to experience severe pain in his legs and lower back. Considering the elements of damages properly considered by the jury, including the nature, extent and duration of plaintiff's injury; the pain and suffering resulting therefrom; the reasonable medical expenses; the disability; the value of earnings lost; and the present cash value of future earnings, we can only conclude that the $315,000 verdict was supported by the evidence. In addition, we find no evidence that the verdict was influenced by the alleged improper argument. The statements made by plaintiff's counsel during argument simply stated what would appear to be obvious to the average juror and were not so inflammatory as to result in an excessive or inflated verdict. They were brief and merely stated the obvious.

Lastly, defendant complains of the trial court's refusal to give its tendered instruction No. 6 which stated, "You are instructed that any award made to plaintiff as damages in this case, if any award is made, is not subject to Federal or State income taxes and you should not consider such taxes in fixing the amount of any award made to plaintiff."

Since this case was argued, the Supreme Court of the United States has decided the case of *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, holding that it was error, in an action brought for the benefit of his survivors for damages resulting from the death of a railroad fireman under the F.E.L.A., to exclude evidence of the income taxes payable on the decedent's past and estimated future earnings and to refuse to instruct the jury that any award would not be subject to Federal income taxes. In so holding, the decision reached by

the court in *Liepelt v. Norfolk & Western Ry. Co.* (1978), 62 Ill. App. 3d 653, 378 N.E.2d 1232, was reversed.

In that case, the administratrix presented the testimony of an economist who estimated the present value of the decedent's lost earnings to be $302,000, after estimating that the lost earnings would have increased approximately five percent per year. The railroad offered the testimony of an expert, which was not allowed in evidence, that the decedent's Federal income taxes would have amounted to $57,000 and computed the present value of future earnings at $138,327. The jury returned a verdict of $775,000, greatly in excess of the plaintiff's expert's estimate of loss of future earnings and any reasonable amount that the jury might award for his children's loss of decedent's guidance, instruction and training.

Admitting that the measure of damages in F.E.L.A. actions is governed by Federal law, the plaintiff argues that the Supreme Court did not intend by its decision to require the instruction here tendered to be given in every F.E.L.A. action as the court was careful to limit its decision to the case before it by holding that it was error to refuse the tendered instruction *"in this case."* The plaintiff also argues that the Supreme Court addressed two issues in *Liepelt.* Part I of the opinion considered the exclusion of evidence of income taxes on the decedent's past and estimated future earnings, and part II dealt with the refusal to instruct that any award of damages was not subject to income taxation. Plaintiff argues that the reversal was premised on the first issue only. Further, that in any event the giving of the cautionary instruction without evidence of what the taxes on lost earnings might be would be unfair as it invites the jury to reduce an award without any suggestion as to the taxes on the lost earnings. The plaintiff suggests that the proper instruction should inform the jury that they should neither add to or subtract from an award of damages because of income tax considerations. Plaintiff argues further that the decision was intended to have prospective application only.

We believe that the plaintiff reads the decision in *Liepelt* too narrowly when he fixes on the words "in this case" in suggesting that the decision was only intended to apply to a case where the size of the award suggested strongly that the jury was influenced by income tax considerations.

As noted, the Supreme Court divided its opinion in *Liepelt* into two parts. Part I was confined to the exclusion of evidence of the amount of income tax payable on decedent's past and future earnings. Part II, without reference to evidence of taxes payable on lost earnings, held it was error to refuse the tendered cautionary instruction. We see no necessary nexus between the two parts nor any suggestion that the court

based its reversal only on the exclusion of evidence of taxes payable on lost future earnings. The plaintiff can hardly complain that the defendant failed to produce evidence that might reduce the estimate of the present value of plaintiff's lost earnings, but, in any event, this evidentiary problem appears unrelated to the cautionary instruction approved in part II of the opinion. In *Domeracki v. Humble Oil & Refining Co.* (3d cir. 1971), 443 F.2d 1245, 1250-51, the court observed that "[a]lthough some courts and writers have confused the evidentiary issue with the question of a cautionary instruction, we believe that the considerations relating to the former issue have no relevance to the second."

As to the suggestion that the jury should be instructed that they neither add to or subtract from an award because of income tax consideration, we do not believe that the court in *Liepelt* considered it a problem or real possibility that a jury would be tempted to reduce an award because of a belief that an award of damages for lost earnings would not be subject to income taxes. In any event, the instruction tendered here would satisfy plaintiff's suggestion as it did not emphasize increasing an award but told the jury not to *consider* income taxes in fixing an award of damages.

Lastly, there is no suggestion that the decision in *Liepelt* be given prospective application only. When the Supreme Court has intended a decision to have prospective application only, it has said so in clear language. (See *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349, and cases therein cited.) Nothing in the opinion would allow us to give the decision only prospective application. In *Chevron Oil Co.*, the Supreme Court stated that "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation], or by deciding an issue of first impression whose resolution was not clearly foreshadowed." (404 U.S. 97, 106, 30 L. Ed. 2d 296, 306, 92 S. Ct. 349, 355.) We cannot say that the decision in *Liepelt* established a new principle of law whose resolution was not clearly foreshadowed by past precedent. See *Domeracki v. Humble Oil & Refining Co.* (3d Cir. 1971), 443 F.2d 1245; *Burlington Northern, Inc. v. Boxberger* (9th Cir. 1975), 529 F.2d 284.

■■ We are obliged to follow the Supreme Court's decision in *Liepelt*. We hold, therefore, that it was error to refuse the tendered instruction. However, having rejected defendant's other assignments of error, we do not believe that the case should be remanded for a new trial on all issues. The jury has determined that the negligence of the railroad was the proximate cause of plaintiff's injuries and has awarded plaintiff substantial damages. A new trial should be awarded defendant limited to the issue of the damages properly due plaintiff. (*Burlington Northern Inc. v.*

*Boxberger* (9th Cir. 1975), 529 F.2d 284; *Cromling v. Pittsburgh & Lake Erie R.R. Co.* (3d Cir. 1963), 327 F.2d 142, 152.) As we noted in *Thatch v. Missouri Pacific R.R. Co.* (1977), 47 Ill. App. 3d 980, 362 N.E.2d 1064, appellate courts may limit the issues to be tried upon remandment for a new trial.

The judgment of the Circuit Court of Madison County is reversed and the cause is remanded with directions that judgment be entered for plaintiff on the issue of liability, and a new trial is ordered limited to the issue of damages.

Reversed and remanded with directions.

JONES, P. J., and KASSERMAN, J., concur.


SUPPLEMENTAL OPINION ON REHEARING

Mr. JUSTICE KARNS delivered the opinion of the court:

We have granted the plaintiff's petition for rehearing on the issue of whether we incorrectly concluded that *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, should be applied retroactively. Plaintiff cites *Ingle v. Illinois Central Gulf R.R. Co.* (Mo. App., Eastern Dist., 1980), 603 S.W.2d 32, which held that the guidelines in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349, required that *Liepelt* be applied prospectively only.

In *Ingle*, the test for prospective application stated in *Chevron Oil Co.* was quoted as follows:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' * * * Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.' * * * (404 U.S. at 106-107, 92 S. Ct. at 355, 30 L. Ed. 2d 305-06. Citations omitted)." (603 S.W.2d 32, 34.)

Applying these principles, *Ingle* reasoned that (1) the *Liepelt* rule was one

of first impression in light of the prior split in the Federal circuits and the Missouri rule barring the nontaxability instruction, (2) the retroactive application of *Liepelt* would not serve the purpose of preventing excessive judgments where the damages awarded were not excessive, and (3) the retroactive application of *Liepelt* would produce results substantially inequitable to the plaintiff where the defendant did not raise the question of excessiveness on appeal and there was no suggestion that the defendant was prejudiced by the failure to give the nontaxability instruction.

In response, the defendant has cited *Lang v. Texas & Pacific Ry. Co.* (5th Cir. 1980), 624 F.2d 1275, where it was held that a retroactive application of *Liepelt* would not result in "manifest injustice." This conclusion was reached even though the trial court had relied on the settled law in the fifth circuit in refusing the nontaxability instruction. The court also noted that in *Chevron Oil Co.*, the Supreme Court had been faced with the question of whether to apply retroactively *Rodrigue v. Aetna Casualty & Surety Co.* (1969), 395 U.S. 352, 23 L. Ed. 2d 360, 89 S. Ct. 1835, where it had held that a Louisiana one-year statute of limitations applied in actions such as the plaintiff's in *Chevron Oil Co.* The Supreme Court declined to apply *Rodrigue* retroactively because the plaintiff would have been deprived of any remedy whatsoever. *Lang* found that no comparable hardship would result in requiring a new trial in which the jury was instructed as to the nontaxability of a personal injury award.

We find *Lang* persuasive. We also note that the Illinois Appellate Court, as well as other courts, while not expressly considering the retroactivity issue, has retroactively applied *Liepelt. Oltersdorf v. Chesapeake & Ohio R.R. Co.* (1980), 83 Ill. App. 3d 457, 404 N.E.2d 320; *Cazad v. Chesapeake & Ohio Ry. Co.* (4th Cir. 1980), 622 F.2d 72; *Seaboard Coastline R.R. Co. v. Yow* (1980), ___ Ala. ___, 384 So.2d 13. ■■ *Liepelt* was held controlling in *Oltersdorf v. Chesapeake & Ohio R.R. Co.* by the same division of the Appellate Court for the First District whose opinion in *Liepelt v. Norfolk & Western Ry. Co.* (1978), 62 Ill. App. 3d 653, 378 N.E.2d 1232, had been reversed only a month earlier. We would feel constrained to follow a prior decision of the appellate court on essentially the same issue, unless that decision was clearly erroneous. Mattis and Yalowitz, *Stare Decisis Among [Sic] the Appellate Court of Illinois*, 28 DePaul L.J. 571 (1979).

Defendant has presented us with excerpts from the plaintiff's brief and petition for rehearing before the Supreme Court in *Liepelt*, in which the plaintiff argued that the great majority of State courts and Federal circuits do not permit the nontaxability instruction and that a departure from this consensus should be prospective only. The petition for rehearing advanced the same arguments made before this court.

Rehearing was denied April 14, 1980. (445 U.S. 972, 64 L. Ed. 2d 250, 100 S. Ct. 1667.) The court's implicit rejection of the prospectivity argument is consistent with our original determination that if the Supreme Court had intended *Liepelt* to be prospective only, it would have said so, if not in its original opinion, then certainly on rehearing.

We therefore decline to alter our original decision.

JONES, P. J., and KASSERMAN, J., concur.